**The STATE of Ohio, Appellee,**

v.

**GONZALES, Appellant.**

[Cite as *State v. Gonzales,* 151 Ohio App.3d 160, 2002-Ohio-4937.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010757.

Decided Sept. 20, 2002.

162

Michael K. Allen, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Sirkin, Pinales, Mezibov & Schwartz, L.L.P., H. Louis Sirkin, and Jennifer M. Kinsley, for appellant.

PAINTER, Presiding Judge.

{¶ 1} Appellant, Alexander Gonzales, has been to trial three times on the same charges. We are here concerned with his latest case. We affirm his conviction.

### Gonzales's First Trial

{¶ 2} In 1998, the state indicted Gonzales on two counts of possession of crack cocaine in excess of 100 grams in violation of R.C. 2925.11(A) and one count of possession of noncrack cocaine in excess of 1,000 grams in violation of R.C. 2925.11(A). A major-drug-offender ("MDO") specification accompanied each count. A jury acquitted him of one of the crack-possession charges and found him guilty of the remaining charges and their accompanying MDO specifications.

The trial court imposed a mandatory ten-year sentence on each count and ordered the sentences to be served consecutively. It imposed no sentence on the MDO specifications.

{¶ 3} This case was appealed, and this court reversed the trial court's judgment.[1] We concluded that the admission of a recorded statement made to the police by Anthony Rodriguez, an accomplice, following his invocation of his Fifth Amendment privilege against self-incrimination constituted prejudicial error under the circumstances. After also concluding that Gonzales's conviction was supported by sufficient evidence, we remanded for a new trial.[2]

### Gonzales's Second Trial

{¶ 4} On remand, Gonzales was retried on the possession counts and accompanying MDO specifications remaining from his first trial. At some point, because of alleged jury tampering during deliberations, the trial court ordered a mistrial without objection.

### Gonzales's Third Trial

{¶ 5} In 2001, because of testimony Rodriguez had provided at the second trial, the state filed a second indictment against Gonzales. The indictment charged him with three additional offenses, including two counts of trafficking in crack cocaine in excess of 100 grams in violation of R.C. 2925.03(A) and one count of trafficking in noncrack cocaine in excess of 1,000 grams, also in violation of R.C. 2925.03(A). MDO specifications accompanied each count. Gonzales was tried on the three trafficking counts and the two possession counts remaining from the 1998 indictment. The judge who presided over this third trial had not presided over the preceding cases.

{¶ 6} Gonzales was convicted of all five counts and their accompanying specifications. The trial court imposed a mandatory ten-year sentence on each of the two possession counts and an additional ten-year sentence on one MDO specification. The trial court ordered the sentences for possession and the one MDO specification to be served consecutively. It ordered the other MDO specification sentence to be served concurrently.

{¶ 7} The trial court imposed concurrent ten-year sentences on each of the trafficking counts and specifications and ordered those sentences to be served concurrently with the sentences imposed on the possession counts and specifications. The sentences imposed under the two indictments totaled thirty years.

---

1. See *State v. Gonzalez* (2000), 138 Ohio App.3d 853, 742 N.E.2d 710.

2. See id.

*Gonzales's Appeal*

{¶ 8} On appeal, Gonzales raises seven assignments of error, contending in the first six that the trial court erred by (1) permitting him to be tried, convicted, and sentenced twice for the same offense, in violation of the Double Jeopardy Clause of both the United States and the Ohio Constitutions; (2) denying him the right to cross-examine the state's key witness regarding the witness's plea bargain; (3) giving improper jury instructions; (4) not suppressing illegally obtained evidence; (5) denying his motion to dismiss based on the unconstitutionality of Ohio's MDO statute; and (6) violating his due-process rights by sentencing him to a longer aggregate term than that imposed in his first trial. In his seventh assignment, Gonzales challenges the weight and the sufficiency of the evidence supporting his convictions.

*The State's Evidence*

{¶ 9} Since 1996, Rodriguez and Gonzales had been involved in transporting cocaine to Cincinnati in a hidden compartment in Rodriguez's Mazda. Although Rodriguez owned the car, the license plates were registered to Gonzales, and it was insured in his name. Generally, Rodriguez, accompanied by Gonzales, would drive between New York and Cincinnati. Gonzales would purchase the cocaine in New York and bring it to Cincinnati, where he would give it to a third person to sell. In November of 1998, Moss Samake was the Cincinnati seller. Samake would take the drugs from Gonzales "on credit" and would pay Gonzales after he had sold them. The trips took place approximately three times a month and involved two to three kilos of cocaine each trip.

{¶ 10} By November 1998, Rodriguez began to distance himself from Gonzales because he did not like Samake, and he wanted to find a legitimate job. He was living with his girlfriend in an apartment at 306 East Liberty Avenue. On November 22, Gonzales called Rodriguez and asked if he wanted to "hang out." Rodriguez and his girlfriend picked up Gonzales at a Cincinnati Ramada Inn and brought him to their apartment. Gonzales told Rodriguez that he was in town to deliver drugs to Samake, showed Rodriguez two kilos of cocaine, and asked him to take them to his apartment for the day. Rodriguez put the drugs in the trunk of his girlfriend's car and brought them to his apartment. They then drank at the apartment until 2:00 a.m., at which time Rodriguez's girlfriend returned Gonzales to the hotel.

{¶ 11} The next day, the Regional Narcotics Unit ("RENU") received a tip from a reliable informant that Gonzales and Thurmond Green were involved with a stolen green Acura parked at the Ramada Inn. John Mercado, a RENU officer, verified that Green and Gonzales were registered at the hotel and determined

that Gonzales was from New York. RENU officers discovered that the Acura had been stolen and set up a surveillance of the hotel.

{¶ 12} During the investigation, Mercado noted a Mazda automobile with New York license plates parked in a rarely used area of the hotel parking lot. He discovered that the automobile was registered to Gonzales. Finding it odd that the Mazda was parked at a location inconvenient to Gonzales's hotel room, the officer inspected the car from the outside and saw that the vehicle identification number on the dashboard looked like it had been tampered with. He also noted pry marks on the door lock. He called for a drug dog, and the dog detected something at the rear wheel well of the car. The car was eventually impounded. It was then discovered that the Mazda had a hidden compartment in the rear wheel well that was disguised by black shoe polish and a silicone and grease substance. The compartment was where the drugs were hidden during the trips between New York and Cincinnati.

{¶ 13} While RENU was conducting a surveillance of the hotel, Samake picked up Gonzales at the Ramada Inn and drove him to Rodriguez's apartment. Rodriguez brought the drugs to his dining-room table. Gonzales weighed a "chunk" of the cocaine and gave it to Samake, who then used Rodriguez's telephone to make a call and left. A short time later, Rodriguez's girlfriend took Gonzales to a Cincinnati restaurant, where he met a man. The man and Gonzales had a drink and then drove to a clothing store in the Corryville area, where they stayed for only three to five minutes.

{¶ 14} Gonzales and the man then returned to Rodriguez's apartment and began drinking. Gonzales received a telephone call that Thurmond Green had been "busted." (The police had arrested Green when he started to leave the Ramada Inn in the stolen car.) Everyone panicked. While they were placing the cocaine in a bag, Gonzales received another call. The caller told him that police had the apartment surrounded. Rodriguez tried to give Gonzales the cocaine, but he refused to take it. He said that he would return for it and left Rodriguez's apartment with a black and yellow Nike duffle bag.

{¶ 15} Rodriguez told his girlfriend to hide the drugs in a closet in the upstairs common area. They then left for Kentucky to buy alcohol. On their way, the police stopped them and arrested Rodriguez. He twice consented to a police search of his apartment. The second consent occurred after the police had threatened to charge his girlfriend with money laundering based on receipts that they had found at his apartment. During the second search, Rodriguez showed them where the drugs were hidden. They found in the closet two scales, 400.6 grams of powder cocaine and 164.2 grams of crack cocaine.

{¶ 16} Meanwhile, RENU officers stopped Gonzales after he had left the apartment and asked to search his bag. They did not find any drugs but did find

an insurance card and registration papers relating to the Mazda and keys. One of the keys belonged to a garage on Colerain Avenue. According to Rodriguez, the garage was used to remove drugs from the hidden compartment in the Mazda. Black shoe polish and containers of silicone were found in the garage. In the Mazda was a ratchet set. The ratchets that fit the size of the bolts holding the cover of the hidden compartment contained a black substance similar to that covering the compartment. The house located at the same address as the garage was vacant. A neighbor had seen Gonzales at the house and had observed several men in the garage in the early morning or late evening. One time, he looked in and saw the men working under the hood of the car.

{¶ 17} RENU officers had also followed Samake. After Samake had left the apartment, he drove to a car wash. He then drove to a housing complex called Hawaiian Terrace. He was driving back toward East Liberty when RENU officers stopped him. Samake consented to the search of his car and the Hawaiian Terrace residence. The officers found $5,000 behind the rear passenger seat of the car and 400.1 grams of crack cocaine in the basement of the Hawaiian Terrace residence.

## Double–Jeopardy Issues

{¶ 18} In his first assignment, Gonzales raises three issues concerning violation of his rights under the Double Jeopardy Clause. Both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibit a person from being put in jeopardy twice for the same offense. Double jeopardy bars both "successive punishments as well as successive prosecutions" for the same offense.[3]

{¶ 19} The bar against successive prosecutions serves to restrain the state from repeatedly trying to convict a person and exposing him or her to "continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence."[4] In contrast, the purpose of barring cumulative punishment for the same offense is to "ensure that the sentencing discretion of courts is confined to the limits established by the legislature."[5] But, as discussed below, the same test is used to determine whether successive prosecutions or multiple punishments are barred by double jeopardy.[6]

---

3. See State v. Moore (1996), 110 Ohio App.3d 649, 652, 675 N.E.2d 13, citing United States v. Dixon (1993), 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556.

4. See Ohio v. Johnson (1984), 467 U.S. 493, 498–499, 104 S.Ct. 2536, 81 L.Ed.2d 425.

5. See id. at 499, 104 S.Ct. 2536, 81 L.Ed.2d 425.

6. See United States v. Dixon (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556.

*Mistrial*

{¶ 20} In his first issue, Gonzales contends that double jeopardy barred the trial underlying this appeal because the mistrial declared previously was not the result of manifest necessity. We have examined the record in this case and find that the transcript of the mistrial is not before us. Although there is discussion in the record before and during Gonzales's oral argument on his motion to dismiss in this case concerning the trial court's review of the mistrial transcript and an alleged letter, and both parties cite pages in the transcript of the mistrial proceedings, neither that transcript nor the letter is before us. (Gonzales's motion to dismiss indicated that a portion of the mistrial transcript would be filed to supplement the motion, and, apparently, the trial court was provided with a copy of the transcript at some point.) The entry declaring a mistrial is in the record.

{¶ 21} Gonzales has the "burden of providing the appellate court with the record and exhibits that demonstrate the assigned errors."[7] Although the transcript of the mistrial proceedings and the letter were apparently provided to the trial court and the trial court discussed them with the parties, they are not part of the record before us. "When the appellant fails to ensure that the necessary exhibits or transcripts are transmitted to the appellate court, this court has nothing to pass on and must presume regularity in the proceedings in the trial court."[8] Accordingly, we must reject Gonzales's argument that the trial court in the proceeding underlying this appeal erred in denying his motion to dismiss on the basis of the previous mistrial.

{¶ 22} Further, if the record had demonstrated what was alleged to have occurred during the second trial, in light of Gonzales's failure to object on the record, we would not have concluded that a retrial would have been barred. In determining whether a trial court has abused its discretion in sua sponte declaring a mistrial, an accused's right to have his case decided by a particular jury is weighed against society's interest in an efficient dispatch of justice, and, depending on the circumstances, the accused's right can be subordinated to the public's interest in a fair trial.[9] Thus, "[w]here the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence."[10] Here, Gonzales did not object to the mistrial.

---

7. See *State v. Israel* (Sept. 26, 1997), 1st Dist. No. C–961006, 1997 WL 598396; App.R. 9.

8. See id., citing *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384, and *State v. Kassis* (Nov. 27, 1996), 9th Dist. No. 17385, 1996 WL 688267.

9. See *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900.

10. See id.

{¶ 23} If the facts were such that the mistrial had not been prompted by the state's misconduct, the mistrial was not inherently unfair to Gonzales, and no objection was made, there would certainly have been no abuse of discretion.[11]

### Allied Offenses of Similar Import

{¶ 24} Gonzales next argues that because he was acquitted on the one count of crack possession in his first trial, the Double Jeopardy Clause of the Fifth Amendment barred subsequent prosecution for any of the crack cocaine counts. Gonzales argues that because the one count of possessing crack cocaine in excess of 100 grams on which he was acquitted and the other trafficking and possession counts on which he was indicted all involved the same amount of crack cocaine, the offenses were allied offenses of similar import.

{¶ 25} The United States Supreme Court applies the test set out in *Blockburger v. United States*[12] to determine whether a defendant has been subjected to multiple prosecutions for the same offense. The *Blockburger* test provides:

{¶ 26} "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."[13]

{¶ 27} "This test focuses on the elements of the statutes used to prove the violations and not on the conduct of the defendant."[14] Thus, where the two offenses for which the defendant is tried cannot survive the 'same elements' test, the double jeopardy bar applies.[15] The Ohio Supreme Court has adopted the *Blockburger* test.[16]

{¶ 28} Further, "[a]s a consequence of *Blockburger*, double jeopardy also bars successive prosecutions for greater and lesser included offenses. A lesser included offense is one that does not require proof of elements beyond those required by the greater offense. To determine what may be a lesser included offense, courts focus on the statutory elements of the offenses rather than the

---

11. See id. at 20, 517 N.E.2d 900.

12. See *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306.

13. See id. at 304, 52 S.Ct. 180, 76 L.Ed. 306.

14. See *State v. Moore*, 110 Ohio App.3d at 652–653, 675 N.E.2d 13.

15. See *Blockburger v. United States*, 284 U.S. at 304, 52 S.Ct. 180, 76 L.Ed. 306.

16. See *State v. Tolbert* (1991), 60 Ohio St.3d 89, 573 N.E.2d 617.

evidence adduced at trial."[17] Under federal law, a lesser included offense is an offense that is necessarily included "within the statutory elements of another offense."[18] The sequence of the prosecutions for the greater and the lesser offenses is immaterial.[19] Under Ohio law, a lesser included offense exists only if (1) one offense is a crime of a lesser degree than the other, (2) the greater offense cannot be committed without the lesser offense also being committed, and (3) the greater offense contains some element that is not required to prove the commission of the lesser offense.[20]

{¶ 29} An exception to the *Blockburger* rule exists in the context of greater and lesser included offenses in two situations: (1) where "the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred," or (2) where, despite due diligence, the state has failed to discover additional necessary facts to sustain the more serious charge before the first trial.[21] An example of the first situation is where a victim dies after the defendant has been convicted of assault and the defendant is then prosecuted for the victim's murder.[22] In a due-diligence situation, "due diligence" means "ordinary, rather than extraordinary diligence."[23] Further, "the proper focus in the determination of due diligence is the circumstances which exist at the time of the first trial and when all actionable facts became available to the prosecution."[24]

{¶ 30} For a period of time, the United States Supreme Court also recognized

---

**17.** See Cinotti, Jones, & Weidenfelder, Thirty–First Annual Review of Criminal Procedure, Double Jeopardy (2002), 90 Geo.L.J. 1528, 1547, and cases cited therein. See *Brown v. Ohio* (1977), 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187; *State v. Tolbert*, 60 Ohio St.3d 89, 573 N.E.2d 617, paragraph one of the syllabus. Accord *United States v. Dixon*, 509 U.S. at 706–707, 113 S.Ct. 2849, 125 L.Ed.2d 556.

**18.** See *United States v. Dixon*, 509 U.S. at 718, 113 S.Ct. 2849, 125 L.Ed.2d 556. (Rehnquist, C.J., concurring in part and dissenting in part).

**19.** See *Jeffers v. United States* (1977), 432 U.S. 137, 151, 97 S.Ct. 2207, 53 L.Ed.2d 168.

**20.** See *State v. Wilkins* (1980), 64 Ohio St.2d 382, 384, 18 O.O.3d 528, 415 N.E.2d 303.

**21.** See *Brown v. Ohio*, 432 U.S. at 169, 97 S.Ct. 2221, 53 L.Ed.2d 187; *Diaz v. United States* (1912), 223 U.S. 442, 448–449, 32 S.Ct. 250, 251, 56 L.Ed. 500; *State v. Tolbert*, 60 Ohio St.3d 89, 573 N.E.2d 617, paragraph two of the syllabus.

**22.** See, e.g., *State v. Tolbert*, 60 Ohio St.3d at 93, 573 N.E.2d 617 (Herbert R. Brown, J., dissenting); *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500.

**23.** See *United States v. Walker* (D.Hawaii 1982), 546 F.Supp. 805, 811.

**24.** See *State v. Goodman* (Feb. 27, 2002), 9th Dist. No. 3220–M, 2002 WL 274639.

a same-conduct test in the successive-prosecution context. In *Grady v. Corbin,*[25] the court determined that a successive prosecution could be barred by double jeopardy if the state sought to establish a necessary element of the crime in the second prosecution by proving *conduct* for which the defendant had been convicted in the first prosecution. That decision was overruled by *United States v. Dixon,*[26] a fractious case in which Justice Scalia, writing for the majority, abandoned the same-conduct test and reestablished the *Blockburger* test as the sole test to determine whether successive prosecutions are barred under double jeopardy. In *Dixon*, the court determined that "[i]n both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the [*Blockburger* ] 'same elements' test, the double jeopardy bar applies."[27] In *State v. Moore,*[28] this court recognized the overruling of *Corbin* and, while recognizing that the Ohio Supreme Court had not directly adopted *Dixon*, stated its belief that Ohio cases relying on *Corbin* had been implicitly overruled because "the Ohio Supreme Court has traditionally applied federal law in the double jeopardy context."[29] Though a good argument can be made that *Corbin* was the more cogent approach, we must follow the law as it stands today.

{¶ 31} Gonzales argues that his successive prosecution was barred because drug possession and drug trafficking are allied offenses of similar import. In Ohio, the legislature has forbidden cumulative punishments for offenses that are allied offenses of similar import. The punishments are merged. "R.C. 2941.25 protects against the multiple punishments for the same criminal conduct in violation of Double Jeopardy Clauses of the United States and Ohio Constitutions."[30]

{¶ 32} For two offenses to constitute allied offenses, the "two crimes share common elements such that the commission of one crime will necessitate the commission of the other."[31] By definition, separate sentences are allowed when the elements of the crimes are not exactly the same.

{¶ 33} To determine whether offenses are of similar import, a court must engage in a two-step analysis. In the first step, the court must determine whether the same conduct by the defendant may be construed to constitute two

25. See *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548.

26. See *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556.

27. See id. at 696, 113 S.Ct. 2849, 125 L.Ed.2d 556.

28. See *State v. Moore*, 110 Ohio App.3d 649, 675 N.E.2d 13.

29. See id. at 653, 675 N.E.2d 13, fn. 7.

30. See id. at 653, 675 N.E.2d 13.

31. See *Ohio v. Johnson*, 467 U.S. at 497, 104 S.Ct. 2536, 81 L.Ed.2d 425, fn. 5.

or more allied offenses of similar import. If so, the defendant can be indicted on all the offenses but can be convicted of only one.[32] In this step, the elements of the offenses are compared, and if the elements correspond to such a degree that the commission of one of the offenses will result in the commission of the other, the offenses are allied offenses of similar import. If this is not so, the offenses are of dissimilar import, and the defendant can be convicted of both. If the offenses are of similar import, the court must next review the defendant's conduct to determine if the offenses were committed separately or with a separate animus as to each offense. If so, the defendant can be convicted of both the offenses.[33]

{¶ 34} In *State v. Rance*,[34] the Ohio Supreme Court determined that the *Blockburger* test (which concludes that two offenses are not the same if each requires proof of an element the other does not) was inapplicable for sentencing purposes where the legislature clearly "signals its intent to either prohibit or permit cumulative punishments for conduct that may qualify as two crimes." Therefore, to determine legislative intent, the court determined that the elements of the offenses should be compared in the abstract under the first step of R.C. 2941.25, as dictated by *Blockburger*.[35] Accordingly, legislative intent seems more naturally garnered from the words of the legislature and not from the particular facts alleged in the indictment.[36] Although the issue in *Rance* did not, in the court's view, involve the successive-prosecution aspect of the Double Jeopardy Clause, its analysis concerning the *Blockburger* test and its conclusion that the elements of statutes must be compared in the abstract are consistent with the Supreme Court's analysis in *Dixon*.[37]

{¶ 35} Dixon concluded that *Blockburger* was applicable to both multiple punishments and successive punishments in determining whether the same offense was involved, and the court looked at the elements textually. Thus, even if we assume that the allied-offenses analysis is applicable to the successive-prosecution component of the Double Jeopardy Clause, as opposed to multiple punishments for the same offense, we must still apply the *Blockburger* abstract comparison-of-the-elements test. (To the extent that Gonzales seeks to have conduct examined, *Dixon's* overruling of *Grady* defeats this argument.)

---

**32.** See R.C. 2941.25(A).

**33.** See *State v. Jones* (1997), 78 Ohio St.3d 12, 13–14, 676 N.E.2d 80.

**34.** *State v. Rance* (1999), 85 Ohio St.3d 632, 635, 710 N.E.2d 699.

**35.** See id. at 637, 710 N.E.2d 699.

**36.** See id.

**37.** See *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556.

{¶ 36} Possession of cocaine under R.C. 2925.11(A), the offense for which Gonzales was acquitted, prohibits a person from knowingly obtaining, possessing, or using a controlled substance. In this case, the controlled substance was over 100 grams of crack cocaine. The offense as charged in the 1998 indictment constituted a first-degree felony.[38] R.C. 2925.03(A) prohibits a person from knowingly selling or offering to sell a controlled substance. In this case, the controlled substance was over 100 grams of crack cocaine, a first-degree felony.[39] The offenses do not constitute greater and lesser offenses under Ohio law. Both are first-degree felonies, and it is not necessary to prove the sale of crack to prove possession of crack.

{¶ 37} By comparing the elements of the two offenses in the abstract, it is clear that each requires proof of an additional fact that the other does not. The possession charge requires proof that a person obtained, possessed, or used crack cocaine. The trafficking charge requires proof that a person sold or offered to sell crack cocaine. It is possible to possess crack cocaine without offering it for sale, and it is possible to sell or offer to sell crack cocaine without possessing it, e.g., when one serves as a middleman.[40] Thus, the two offenses are distinguishable under the *Blockburger* test for purposes of successive prosecutions. Similarly, the elements do not correspond to such a degree that the commission of one will result in the commission of the other.[41] The offenses are not allied offenses of similar import. This situation is somewhat odd. Were it possible to sell or offer to sell without possessing the drugs, we would have a difficult time reconciling *Rance* with common sense.[42] But the unique juxtaposition of the elements here gives us no problem.

{¶ 38} Gonzales's reliance on *State v. Roberts* is misplaced. *Roberts* involved a statute prohibiting possession of a narcotic drug for sale and a statute prohibiting the sale of a narcotic drug. Obviously, the two offenses were allied offenses of similar import. The proof of the elements for the sale of the narcotic drug also proved the possession of a narcotic drug for sale.[43]

---

**38.** See R.C. 2925.11(C)(4)(f).

**39.** See R.C. 2925.03(C)(4)(g).

**40.** Accord *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798; *State v. Johnson* (2000), 140 Ohio App.3d 385, 747 N.E.2d 863.

**41.** See *State v. Johnson*, supra.

**42.** See *State v. Palmer*, 148 Ohio App.3d 246, 2002-Ohio-3536, 772 N.E.2d 726, at ¶ 17 (Painter, P.J., dissenting).

**43.** Accord *State v. Hankins* (1993), 89 Ohio App.3d 567, 626 N.E.2d 965.

## MDO Specification

■ {¶ 39} In his next argument, Gonzales claims that Ohio's statutory drug scheme violates the Double Jeopardy Clause because the statutes prohibiting drug possession and drug trafficking require proof of identical elements contained in the MDO specification. According to Gonzales, this duplication permits multiple penalties for a single crime. Gonzales's offenses were possessing and trafficking in crack and powder cocaine. The factor generating the additional penalty was the amount of crack and powder cocaine involved.

■ {¶ 40} The Double Jeopardy Clause "protects against multiple punishments for the same offense."[44] But not every imposition of multiple punishments violates double jeopardy. In the context of cumulative sentences imposed in a single trial, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[45] Thus where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."[46] Accordingly, where it is alleged that the imposition of multiple punishments for one offense contravenes the defendant's constitutional rights, a reviewing court "is limited to ensuring that the trial court did not exceed the sentencing authority which the General Assembly has permitted the judiciary."[47]

{¶ 41} Under R.C. 2941.14.10, the indictment or charging instrument must specify that the offender is a major drug offender, except as provided in R.C. 2953.03 and 2925.11. R.C. 2925.03(C)(4)(g) provides that whoever violates R.C. 2925.03(A), drug trafficking, where the amount of powder cocaine exceeds 1,000 grams or the amount of crack cocaine exceeds 100 grams, is a major drug offender by operation of law, and the court must impose the maximum ten-year prison sentence for the felony violation. R.C. 2925.11(C)(3)(f) provides that a person possessing such amounts of crack and powder cocaine is a major drug offender and provides the same mandatory ten-year sentence. The provisions

---

**44.** See *State v. Moss* (1982), 69 Ohio St.2d 515, 518, 23 O.O.3d 447, 433 N.E.2d 181, quoting *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656.

**45.** See *State v. Sims* (1984), 19 Ohio App.3d 87, 89, 19 OBR 171, 482 N.E.2d 1323, quoting *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535.

**46.** See *Missouri v. Hunter*, 459 U.S. at 368–369, 103 S.Ct. 673, 74 L.Ed.2d 535.

**47.** See *State v. Moss*, 69 Ohio St.2d at 518, 23 O.O.3d 447, 433 N.E.2d 181, see, also, *State v. Childs* (2000), 88 Ohio St.3d 558, 561, 728 N.E.2d 379.

also state that the trial court may impose an additional one-to-ten-year mandatory prison term prescribed for a major drug offender under R.C. 2929.14(D)(3)(b). If the trial court imposes an additional prison term over the mandatory ten-year prison term, it must make required findings under R.C. 2929.14(D)(2)(b)(i) and (ii).

{¶ 42} The sentencing provisions clearly reflect the legislature's intent to create a penalty for a person who sells or possesses certain amounts of cocaine over and above the penalty imposed for the drug trafficking or possession itself. Because the legislature has specifically authorized cumulative punishment, it is not a double-jeopardy violation. We overrule Gonzales's first assignment.

### Right to Cross–Examine

{¶ 43} Gonzales argues that the trial court's refusal to allow his counsel to cross-examine Rodriguez on the fact that Rodriguez had received, in exchange for his testimony, an agreed sentence that was less than the mandatory sentence for drug possession violated Gonzales's Sixth Amendment right to confrontation. In other words, Gonzales was allegedly limited in cross-examining Rodriguez concerning his incentive to lie. Gonzales's counsel proffered that if he had been allowed to continue Rodriguez's questioning, Rodriguez would have admitted that he had pleaded guilty to a violation of R.C. 2925.03(A) involving an amount of cocaine in excess of 100 grams. While the mandatory prison term for that offense is ten years, Rodriguez had been sentenced to only five years. (The record demonstrates that Rodriguez pleaded guilty to possession of an amount of crack cocaine in excess of 100 grams, a first-degree felony, for which R.C. 2925.11(C)(3)(f) mandated a ten-year sentence. A second count and specifications to both were dismissed. The agreed plea was in exchange for a five-year mandatory prison term.)

{¶ 44} As this court has explained, "While the Sixth Amendment to the United States Constitution * * * guarantee[s] the right of a criminal defendant to confront the witnesses against him for the biases they may hold, the trial court retains wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, or relevance of the inquiry. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."[48] (Citation omitted.)

{¶ 45} In our view, a more detailed explanation of this standard of review is necessary, and we adopt the explanation provided by the Seventh

---

48. See *State v. McIntosh* (2001), 145 Ohio App.3d 567, 578, 763 N.E.2d 704.

Circuit in *United States v. Nelson.*[49] That court explained, "[W]here limitations directly implicate the Sixth Amendment right of confrontation, we review the limitation de novo. Thus, when deciding whether limitations of cross-examination are permissible, 'courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of trial judge's discretion.' "[50] Limitations on cross-examination that deny a defendant "the opportunity to *establish* that the witnesses may have had a motive to lie" infringe on core Sixth Amendment rights, not merely the denial to counsel of the "opportunity to *add extra detail* to that motive."[51] Accordingly, "[o]nce this core function is satisfied by allowing cross-examination to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury. The trial court may preclude 'cumulative and confusing cross-examination into areas already sufficiently explored to permit the defense to argue personal bias and testimonial unreliability.' "[52]

{¶ 46} On cross-examination, Rodriguez testified that he had pleaded guilty to possession of crack cocaine, that he had been offered a plea bargain, and that he had accepted it because he was not "going to risk [his] life and twenty-five years when [he] could do five." He stated that he had been offered five years. Counsel asked Rodriguez whether he had been told that the offense to which he pleaded guilty had a mandatory ten-year term. Sustaining an objection, the trial court instructed the jury to disregard Rodriguez's negative response to the question. The trial court explained during a sidebar that it did not want the jury to know about penalties because the issue of punishment was not for the jury's consideration.

{¶ 47} The jury heard Rodriguez's motive to lie about Gonzales. But counsel was not permitted to explore the issue to the extent counsel desired to "hammer it home" to the jury. Thus, this case did not concern Gonzales's core Sixth Amendment rights, and our review is for abuse of discretion.

 {¶ 48} Under this standard, we must determine whether "the jury had sufficient information to make a discriminating appraisal of the witness's motives and bias."[53] Federal cases have held that it is not an abuse of discretion to "limit

---

49. See *United States v. Nelson* (C.A.7, 1994), 39 F.3d 705, 708.

50. See id., quoting *United States v. Saunders* (C.A.7, 1992), 973 F.2d 1354, 1358.

51. See id. (Emphasis in the original.)

52. See id., quoting *United States v. Robinson* (C.A.7, 1987), 832 F.2d 366, 373.

53. See id., quoting *United States ex rel. Ashford v. Director, Ill. Dept. of Corr.* (C.A.7, 1989), 871 F.2d 680, 683. See *United States v. Luciano–Mosquera* (C.A.1, 1995), 63 F.3d 1142, 1153.

inquiry into the potential sentences faced by a cooperating witness."[54] The primary question in this context is whether a defendant has been afforded an opportunity to expose a cooperating witness's subjective understanding of his plea bargain because it is the witness's subjective understanding that is probative of bias or motive.[55] Thus, the pertinent inquiry is what a witness believed his sentence would have been, rather than the actual sentence.[56]

{¶ 49} While we believe that the trial court's limitation was technically erroneous in not allowing Gonzales to ask whether Rodriguez knew that possession of crack cocaine in excess of 100 grams had a mandatory ten-year sentence,[57] we believe that the error was not an abuse of discretion. Rodriguez's subjective belief was that he could have been sentenced to up to twenty-five years if he had not pleaded guilty. The trial court allowed cross-examination to demonstrate why Rodriguez had pleaded guilty and that, by entering a plea, he had received a lesser sentence. Under these facts, we conclude that the trial court's decision was not an abuse of discretion, because the jury had sufficient evidence to enable it to make a discriminating appraisal of Rodriguez's bias and incentives to lie. We overrule Gonzales's second assignment.

### Jury Instruction

{¶ 50} In his third assignment, Gonzales argues that the trial court erred in two ways: (1) by giving a complicity instruction where the evidence failed to support the charge and (2) by refusing to give his requested instructions regarding the credibility of a codefendant's testimony and false testimony.

{¶ 51} A defendant may be charged in an indictment as a principal, but a jury may be instructed on complicity where the evidence at trial reasonably supports a finding that he was an aider or abettor.[58] As this court explained in *State v. Jones*,[59] "[T]o constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. * * * In this context, a

---

54. See *United States v. Ambers* (C.A.4, 1996), 85 F.3d 173, 176, and cited cases therein.

55. See id.

56. See id.

57. Accord *State v. Manuel* (Apr. 21, 1988), 8th Dist. No. 53294, 1988 WL 38124; *State v. Hanks* (Feb. 3, 1981), 10th Dist. No. 80AP–118, 1981 WL 2978.

58. See *State v. Campa* (Mar. 29, 2002), 1st Dist. No. C–010254, 2002 WL 471174; *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, paragraph five of the syllabus.

59. See *State v. Jones* (Sept. 27, 1995), 1st Dist. No. C–940691, 1995 WL 566623.

person aids when he assists another in performing an act, and abets when he incites or encourages an individual to act in a particular manner." Such participation "may be demonstrated by both direct and circumstantial evidence."[60] Reviewing the evidence, we conclude that the trial court did not err by giving the complicity instruction.

{¶ 52} As to the trial court's refusal to give Gonzales's requested instructions, a requested jury instruction that is "correct, pertinent, and timely presented" must be included unless it has been covered by other instructions.[61] The requested instructions stated:

{¶ 53} "You have heard testimony from Manuel Antonio Rodriguez, a person who plead [sic] guilty to one of the same crimes charged in this case. The weight to give his testimony is a matter for you to determine. Testimony of a person who has plead [sic] guilty to a crime charged in this case should be viewed with grave suspicion and weighed with caution.

{¶ 54} "If a person is shown to have knowingly testified falsely concerning any important or material matter, you obviously have a right to distrust the testimony of such an individual concerning other matters. You may reject all of the testimony of that witness or give it such weight or credibility as you think it might deserve."

{¶ 55} The trial court charged the jury on the testimony of an accomplice in these terms:

{¶ 56} "You have heard testimony from a person in this case who is said to be an accomplice. An accomplice is one who knowingly joins another in the commission of a crime. Whether the witness was an accomplice and the weight to give his testimony are matters for you to determine from all the facts and circumstances in evidence. The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶ 57} This instruction is found in R.C. 2923.03(D) and in the Ohio Jury Instructions.[62]

---

60. See id.

61. See *State v. Boulabeiz* (1994), 92 Ohio App.3d 238, 241, 634 N.E.2d 700.

62. See 4 Ohio Jury Instructions (2001) 44–45, Section 405.41.

{¶ 58} The trial court also charged the jury that it was the exclusive judge of any witness's credibility, that it could believe all or part of a witness's testimony, and that in determining which part of a witness's testimony to believe, it could consider inconsistencies in the witness's testimony. The jury was provided written instructions.

{¶ 59} We conclude that the trial court did not err by refusing to give the requested instructions because they were covered by other instructions. Thus, we overrule Gonzales's third assignment.

*Motions to Suppress*

{¶ 60} In his first trial, Gonzales moved to suppress evidence based on the claim that his arrest and the seizure of his automobile were without probable cause. The trial court denied his motions. In his third trial, Gonzales, in essence, sought a rehearing on his motions to suppress. The state argued that the issues had been determined and attached a transcript of the suppression hearing. Gonzales argued that, based on the facts contained in the transcript of the first suppression hearing, there was no probable cause for the seizure or for his arrest. Relying on the transcript of the suppression hearing held prior to the first trial, the trial court denied the motions, concluding that the first trial judge had properly denied them. But no entry was journalized. In this appeal, Gonzales assigns as error the denial of his motions in the third trial.

{¶ 61} In the appeal of Gonzales's first conviction, we determined that error had occurred during trial because of the admission of prejudicial evidence. We remanded for further proceedings consistent with that decision. In a case where a conviction is reversed on appeal, "on remand from an appellate court, the trial court must proceed from the point at which the error occurred. * * * In this case, the error that prompted the order of remand in the first appeal occurred at appellant's first trial, not at the motion to suppress."[63] Similarly, in our case, the remand did not involve pretrial issues.

{¶ 62} Further, the reconsideration of the suppression motions based on the same evidence would have been precluded under the doctrine of res judicata. The doctrine precludes an appellant from relying on arguments on remand that could have been fully pursued in a first appeal. Gonzales litigated in his first trial exactly the same issue he now raises in this case. Gonzales's first trial ended in a conviction on two counts and an acquittal on one. He had the

---

63. See *State v. Clark* (Sept. 8, 1993), 1st Dist. No. C–920603, 1993 WL 342229. See, also, *State v. Poffenberger* (Apr. 21, 1982), 1st Dist. No. C–810448, 1982 WL 8490 (remand for new trial did not extend to pretrial motions, especially where appellate court had deemed an attempt to suppress to have been waived).

opportunity to appeal the trial court's suppression ruling after his conviction, but he chose not to do so. As the Ohio Supreme Court has explained, "Where an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider the same argument on a second appeal following remand."[64] Although in this case the trial court indicated that it had made a "new ruling," it merely adopted the earlier court's decision. Although it was inappropriate to reconsider the issue, there was no error, as the trial court's conclusion maintained the status quo. We overrule Gonzales's fourth assignment.

### Separation of Powers

{¶ 63} In his fifth assignment, Gonzales claims that the MDO statute is unconstitutional because a mandatory prison term violates the doctrine of separation of powers. We addressed this issue in *State v. Campa*[65] in the context of the imposition of a mandatory eight-year sentence under R.C. 2925.11(C)(3)(f). We concluded that "[m]andatory sentencing laws enacted pursuant to [legislative authority to define criminal conduct and to determine appropriate punishment] do not usurp the judiciary's power to determine the sentence of individual offenders."[66] While we might question the wisdom of mandatory sentencing legislation, that legislation is undoubtedly constitutional. Gonzales's fifth assignment is overruled.

### Excessive Punishment

{¶ 64} In his sixth assignment, Gonzales argues that his due-process rights were violated when he received a greater sentence than that imposed in his first trial. He claims that the sentence was vindictive.

{¶ 65} The United States Supreme Court held in *North Carolina v. Pearce*[67] that due process is violated when a defendant is penalized for successfully pursuing an appeal. *Pearce* determined that a presumption of vindictiveness exists when a harsher sentence is imposed following retrial unless identifiable conduct by the defendant occurs after the original sentencing to justify a harsher sentence. The presumption is not applied where retrial is on additional counts[68]

**64.** See *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710.

**65.** See *State v. Campa*, supra.

**66.** See id. See, also, *State v. Powell* (Dec. 31, 1998), 11th Dist. No. 97–L–253, 1998 WL 965991; *State v. Woods* (July 19, 1995), 9th Dist. No. 2376–M, 1995 WL 434374; *State v. Bonello* (1981), 3 Ohio App.3d 365, 3 OBR 428, 445 N.E.2d 667.

**67.** See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

**68.** See *People v. Williams* (Colo.App.1996), 916 P.2d 624.

or when two different judges have sentenced the defendant.[69] Both of these situations exist here. Because there is no presumption of vindictiveness in this case, the trial court was not required to state its reasons for imposing a longer sentence (other than that required under the felony-sentencing guidelines), and Gonzales had the burden of affirmatively showing a vindictive motive.[70] He failed to do so.

### Sufficiency and Weight

{¶ 66} In his last assignment, Gonzales collectively challenges the weight and the sufficiency of the evidence supporting his convictions. A reviewing court will reverse a jury verdict on insufficient evidence only when there is no substantial evidence, when viewed in a light most favorable to the state, upon which the jury could have relied.[71] In addressing a challenge to the weight of the evidence, a reviewing court must weigh the evidence and all reasonable inferences and consider the credibility of the witnesses to determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[72] We have reviewed the record applying these standards and conclude that Gonzales's convictions were supported by sufficient evidence and were not against the weight of the evidence. We overrule his last assignment.

### Conclusion

{¶ 67} Accordingly, we overrule all of Gonzales's assignments of error and affirm the trial court's judgment.

Judgment affirmed.

DOAN and HILDEBRANDT, JJ., concur.

---

**69.** See *Lodi v. McMasters* (1986), 31 Ohio App.3d 275, 277, 31 OBR 603, 511 N.E.2d 123, citing *Texas v. McCullough* (1986), 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104, and *Colten v. Kentucky* (1972), 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584.

**70.** See id.; See *State v. Solis Aguirre* (June 14, 2000), 9th Dist. No. 99CA007434, 2000 WL 763343.

**71.** See *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.

**72.** See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.