[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from convictions for drug trafficking and cocaine possession rendered in the Lucas County Court of Common Pleas following a jury trial. Because we conclude appellant's trial was properly conducted and he was not denied effective assistance of counsel, we affirm.
 {¶ 2} On October 11, 2000, Toledo police arrested Kenneth Sharp for possession of nine ounces of cocaine. During an interview following his arrest, Sharp told police that his supplier was appellant, Jomoko T. Graves. In fact, Sharp told police, only that day Graves had offered to sell him two kilograms of cocaine.
 {¶ 3} Sharp agreed to cooperate with police to set up a cocaine purchase from appellant. Sharp paged Graves, indicating in an encoded message that he wished to purchase a kilogram of cocaine. A few minutes later, Graves called Sharp. In the ensuing conversation recorded by police, Graves agreed to meet Sharp in 30 minutes at a north Toledo house.
 {¶ 4} Police set up surveillance near the house at which the meeting between Sharp and Graves was set. Soon they observed appellant arrive and emerge from a pickup truck. Appellant was then arrested. Two kilograms of cocaine were found on the seat of the truck. Subsequent to the arrest, police searched appellant's home where they found numerous firearms, ammunition, and a bulletproof vest. The search also revealed a package of "creatine" and $7,690 in cash.
 {¶ 5} Appellant was initially indicted for cocaine possession with a major drug offender specification. A trafficking charge, also with a major drug offender specification, was later added. After appellant's motion to suppress the cocaine from evidence was denied, the matter proceeded to a jury trial. At trial, appellant admitted to agreeing to sell Sharp the cocaine, but asserted that he was entrapped by Sharp who was acting as an agent for the police. According to appellant, Sharp had earlier come to him, telling him that Sharp had been threatened with death unless he obtained a large quantity of cocaine. Appellant testified that he feared for Sharp's safety and acquired the cocaine from an acquaintance of his named Philipe in order to save Sharp's life.
 {¶ 6} Appellant was convicted of both counts and specifications and was sentenced to concurrent terms of ten years incarceration on each count and concurrent one year terms on the specifications. The felonies and specifications were to be served consecutively. The court also ordered that appellant pay a $20,000 fine, $10,000 for each count.
 {¶ 7} It is from this judgment of conviction and sentence that appellant now appeals. Appellant sets forth the following 11 assignments of error:
 {¶ 8} "Assignment of Error No. 1:
 {¶ 9} "The trial court erred in permitting the state to use a peremptory strike on an African American juror despite a timely Batson
challenge and in misapplying the law as set forth in Batson v. Kentucky
(1986), 476 U.S. 79, and its progeny.
 {¶ 10} "Assignment of Error No. 2:
 {¶ 11} "The trial court committed error in overruling appellant's motion in limine to prevent the state from presenting evidence regarding firearms, ammunition, a bulletproof best, and cash discovered during a search of appellant's residence when the state presented no evidence linking any of those items to the offenses in this case.
 {¶ 12} "Assignment of Error No. 3:
 {¶ 13} "Appellant was denied his right to effective assistance of counsel when his trial counsel failed to preserve the issue by objecting to evidence regarding the items and their actual admission into evidence as exhibits.
 {¶ 14} "Assignment of Error No. 4:
 {¶ 15} "Appellant was denied his right to effective assistance of counsel when his trial counsel declined to conduct voir dire of the state's criminalist and established for the state a clear, proper, and total chain of custody of the drugs in this case, thereby ensuring that the fact the drugs were as alleged in the indictment could not be challenged.
 {¶ 16} "Assignment of Error No. 5:
 {¶ 17} "Appellant was denied his right to effective assistance of counsel when his trial counsel presented a defense of entrapment without ever seeking to demonstrate that the person who allegedly entrapped appellant, the state's agent, Keith Sharp, was working for the state before appellant agreed to deliver drugs to him and by affirmatively having appellant admit that he agreed to deliver the drugs at a time when there was no evidence whatsoever that Sharp was working for the state.
 {¶ 18} "Assignment of Error No. 6:
 {¶ 19} "Cumulative error deprived appellant of a fair trial, a reliable verdict, and due process.
 {¶ 20} "Assignment of Error No. 7:
 {¶ 21} "Appellant's right to due process and jury trial as provided and guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution were violated when the trial court made the finding that appellant was a major drug offender and then increased his sentence beyond the statutory maximum.
 {¶ 22} "Assignment of Error No. 8:
 {¶ 23} "Appellant's rights to due process and jury trial as provided and guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution were violated when the findings necessary to increase the sentence beyond the statutory maximum were not charged in the indictment, were not proved beyond a reasonable doubt, and were made by the trial court rather than the jury.
 {¶ 24} "Assignment of Error No. 9:
 {¶ 25} "The trial court erred in imposing sentence for trafficking in cocaine and for possessing cocaine when the cocaine in each instance was exactly the same.
 {¶ 26} "Assignment of Error No. 10:
 {¶ 27} "Appellant was denied his right to effective assistance of counsel when his trial counsel failed to object to the Apprendi and double jeopardy violations.
 {¶ 28} "Assignment of Error No. 11:
 {¶ 29} "The trial court erred when it failed to find that a warrantless search conducted without exigent circumstances and probable cause determined by a magistrate was per se unreasonable under theFourth Amendment of the United States Constitution."
I. Batson Challenge
 {¶ 30} In his first assignment of error, appellant complains that the trial court erroneously overruled his challenge, pursuant to Batsonv. Kentucky (1986), 476 U.S. 79, of the state's exercise of a peremptory strike on an African-American juror. According to appellant, the court misapplied Batson by insisting that the defendant show a pattern of discriminatory peremptory challenges before considering a Batson
analysis.
 {¶ 31} At trial, following voir dire, the state used its first peremptory juror challenge to strike an African-American venireperson. The following exchange then occurred:
 {¶ 32} "The Court: Miss [R] will be excused by the State as number one.
 {¶ 33} "[Defense counsel]: Your Honor, I would object to that based on Batson from Louisiana [sic.]. What reason does he have?
 {¶ 34} "The Court: First of all, there has to show — the base criteria is a pattern of discriminatory exercises. This is the very first peremptory.
 {¶ 35} "[Prosecutor]: To the extent that —
 {¶ 36} "The Court: If he wants to, give you a race neutral excuse.
 {¶ 37} "[Prosecutor]: Simply to protect the record, Your Honor.
 {¶ 38} "The Court: Sure.
 {¶ 39} "[Prosecutor]: My concern is that both the Court, defense counsel and I had to raise our voices to make sure that she could hear. The witnesses — and I know for a fact I have several witnesses who are very soft-spoken. They have some crucial testimony to provide. I don't want her to miss any of that.
 {¶ 40} "In addition, I have family members who have arthritis, and it's a very distracting condition to have, and while it may not be basis for cause, I don't want any distractions in this case either for State or Mr. Graves. I think it would be appropriate to strike her.
 {¶ 41} "The Court: To the extent there isn't valid Batson objection it will be overruled.
 {¶ 42} "[Defense]: Thank you."
 {¶ 43} The purposeful exclusion of jury members on the basis of race violates the equal protection rights of a defendant of the same race. Batson, supra, 86. Batson established a three-step procedure to determine whether such purposeful exclusion exists in the state's exercise of peremptory strikes in jury selections:
 {¶ 44} "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination." State v. White (1999), 85 Ohio St.3d 433, 436, citing Batson at 96-98.
 {¶ 45} With respect to the first prong of the Batson test, appellant is correct. Although at one time the test for making a prima facie showing of racial discrimination in the use of peremptory challenges required evidence of a prosecutor's systematic pattern of peremptory strikes against minorities over time, Swain v. Alabama (1965),380 U.S. 202, 227; Hernandez v. Texas (1954), 347 U.S. 475, 480; Norrisv. Alabama (1935), 294 U.S. 587, Batson and its progeny relieved the defendant of this onerous burden. Today, "* * * the mere fact that the state challenged only one black prospective juror does not preclude aBatson challenge." State v. White, supra, at 436. Moreover, whether or not a prima facie showing of discrimination is made is a moot question once the state gives its reason for exercising the strike under the second Batson prong. Id. at 437.
 {¶ 46} In this matter, although the court stated its erroneous belief that a pattern of discrimination was necessary, it nonetheless permitted the state to articulate a race neutral explanation for its exercise of the peremptory strike; specifically, the prospective juror's apparent hearing difficulty and her arthritis.
 {¶ 47} Appellant now argues that there is nothing in the record to support the state's assertion that the venireperson was hearing impaired and suggests that the prosecutor's contention that her arthritis might be distracting is, "* * * an insult to every person who suffers from arthritis, but functions proudly and competently." In any event, according to appellant, the trial court never made a proper determination of whether the state's peremptory strike was permissible.
 {¶ 48} We grant that there may be ambiguity when we juxtapose the trial court's erroneous statement concerning a pattern and its conclusion that "* * * there isn't [a] valid Batson objection". However, between these comments, the court allowed the state to give a race neutral reason for its strike. It is not clear that the court's ruling is an assessment of the neutral reason or a rejection because of the lack of a pattern. Where such ambiguity exists, we will not presume error, State v.Williams (1991), 74 Ohio App.3d 686, 693, but will assess whether the court could have properly ruled as it did. State v. Celestino (Mar. 9, 1993), Sandusky App. No. S-91-50; Taylor v. Yale Towne Mfg. Co.
(1987), 36 Ohio App.3d 62, 63.
 {¶ 49} When asked to state a race neutral basis for the exercise of his peremptory strike of juror Miss R., the prosecutor stated that he was concerned about her hearing and that her arthritis might impede her attention to the evidence. Appellant maintains that there is nothing in the record to support that Miss R had a hearing problem and that using arthritis as an excuse insults people with arthritis.
 {¶ 50} The reason articulated in prong two of the Batson test need not rise to the level of one which justifies a challenge for cause.Batson at 97. The reason only need be race neutral and create "overall concerns." State v. White, supra, at 437. Here, the reason stated was race neutral and could be viewed as being a legitimate cause for concern. As for being factually supported; notwithstanding appellant's concern that labeling arthritis as "distracting" is insulting, the record supports that Miss R. had arthritis. As regards her hearing, the prosecutor described the necessity of both counsel to raise their voices to be heard by this juror. Appellant's trial counsel did not object to this characterization; consequently, the statement itself is evidence of its truth.
 {¶ 51} Accordingly, the state's explanation for its peremptory challenge of an African-American juror was race neutral and supported by the record. Therefore, appellant failed to carry his burden to show that the peremptory challenge had a discriminatory motive. See id. Consequently, appellant's first assignment of error is not well-taken.
 {¶ 52} Admissibility of Weapons and Cash
 {¶ 53} Prior to trial, appellant filed a motion in limine to bar introduction into evidence of the guns, ammunition, bulletproof vest, cash, and creatine found during the consent search of his home. Appellant argued that these items were irrelevant to the drug charges of which appellant was accused and that any slight relevance these items might have was outweighed by the unfair prejudice their introduction might engender.
 {¶ 54} On the day of the trial, the trial court denied the motion. During the trial, the items at issue were admitted into evidence without objection. Appellant now asserts that the admission of these items was erroneous.
 {¶ 55} The state responds that appellant waived any error of the denial of the motion in limine by failing to object at trial. This is, of course, true. Rulings on motions in limine are interlocutory and not final until raised in the context of trial. Failure to object to the evidence at trial constitutes a waiver, State v. Grubb (1986),28 Ohio St.3d 199, 201-202; State v. Maurer (1984), 15 Ohio St.3d 239,259-260, and may not form the basis for reversal on appeal absent plain error. Plain error exists only when the error would clearly alter the outcome of the trial. Crim.R. 52(B); State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 56} In this case, we find no error, plain or otherwise. At trial, several witnesses testified that creatine is a "cutting agent" used to dilute cocaine and increase its sales value. Moreover, there was testimony that guns and large amounts of cash are tools of the drug dealers' trade. On this uncontroverted testimony, we cannot say that the items which were admitted were irrelevant or unfairly prejudicial.
 {¶ 57} Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 58} Ineffective Assistance of Counsel
 {¶ 59} In his third, fourth and fifth assignments of error, appellant asserts he was, for various reasons, denied his right to effective assistance of counsel.
 {¶ 60} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."Strickland v. Washington (1984), 466 U.S. 668, 687. Accord, State v.Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 61} Scrutiny of counsel's performance must be deferential.Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v.Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v. Lott (1990),51 Ohio St.3d 160, for Ohio's adoption of the Strickland test.
 {¶ 62} We have essentially already responded to appellant's third assignment of error. Since the evidence that was the topic of appellant's pretrial motion in limine was admissible, trial counsel was not deficient in failing to object to its admission during trial. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 63} In his fourth assignment of error, appellant complains that he was denied effective assistance of counsel due to counsel's failure to challenge the testing and chain of custody of the cocaine seized from him.
 {¶ 64} Appellant's trial counsel made a strategic decision to pursue an entrapment defense. To employ such a defense, a defendant must show that the criminal design of his acts originated with the government and that the agents of the government implanted the disposition to commit the offense in the mind of an innocent person. State v. Doran (1983),5 Ohio St.3d 187, 192-193. Theoretically, a defendant could assert entrapment as an alternative defense: I did not do it, but if I did, the government planted the idea in me. In a practical sense, however, it might not be sound strategy to employ such a tactic.
 {¶ 65} Here, appellant admitted the acts underlying the offenses for which he was charged. This was trial strategy which made a challenge to the testing of the cocaine or its chain of custody inconsistent with the defense. This may not now form the basis of an ineffective assistance of counsel complaint. Strickland, supra, at 186. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 66} In his fifth assignment of error, appellant claims that his trial counsel was ineffective for failing to establish that Keith Sharp was a police agent prior to October 11, 2000.
 {¶ 67} As the state responds, counsel's failure to establish Sharp's agency was not for want of trying. Trial counsel devoted a substantial amount of time in the cross-examination of the lead detective in the case in an attempt to establish exactly such a prior relationship. Moreover, it is highly likely that defense counsel avoided asking Keith Sharp about such a relationship because he was afraid of Sharp's response. Thus the purported deficiency in counsel's performance of which appellant complains might be considered a sound trial tactic. Accordingly, appellant's fifth assignment of error is not well-taken.
Suppression Motion
 {¶ 68} Under the Fourth Amendment to the Constitution of the United States and Article I, Section 14 of the Constitution of Ohio, warrantless searches are unreasonable per se. State v. Kessler (1978),53 Ohio St.2d 204, 207. To this basic rule there are but a few specifically established exceptions. The state bears the burden of proving that one of these exceptions applies in order for evidence seized as the result of a warrantless search to survive a motion to suppress. Id.
 {¶ 69} Prior to trial, appellant moved to suppress the two kilos of cocaine found in a bag on the seat of his pickup truck. At the suppression hearing, the state successfully argued that the warrantless search of the truck was excepted from the exclusionary rule because it was incident to appellant's arrest or, alternatively, would have been inevitably discovered when the police conducted a routine inventory search of the truck prior to impounding it.
 {¶ 70} "When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483, syllabus.
 {¶ 71} "The doctrine of inevitable discovery is a corollary of the independent source exception to the exclusionary rule which holds that evidence will not be suppressed if the state learns of the questioned evidence from a source separate and distinct from an illegal source. WongSun v. United States (1963), 371 US. 471, 487-488. The inevitable discovery rule states that, `if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by a lawful means * * * the evidence should be received.' Nix v. Williams, supra, at 444. See, also,State v. Perkins (1985), 18 Ohio St.3d 193, syllabus." State v. Smith
(1991), 73 Ohio App.3d 471, 477.
 {¶ 72} In the suppression hearing on this matter, the uncontroverted testimony was that it was Toledo police policy to conduct an inventory search prior to the impoundment of vehicles belonging to persons who have been arrested. Routine inventory searches of impounded vehicles from individuals taken into custody are reasonable procedures and evidence obtained from such a search is admissible. State v. Hathman
(1992), 65 Ohio St.3d 403, paragraphs one and two of the syllabus.
 {¶ 73} Consequently, if appellant's arrest was lawful, the cocaine seized from his truck was admissible.
 {¶ 74} A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v.Heston (1972), 29 Ohio St.2d 152, 155-156, quoting Beck v. Ohio (1964),379 U.S. 89, 91.
 {¶ 75} Appellant complains that Keith Sharp was a drug dealer and could not be trusted. Moreover, during the telephone call during which Sharp supposedly set up a drug buy with appellant, police could not hear appellant's portion of the call and, therefore, relied solely on Sharp's word that such an appointment had been made.
 {¶ 76} Even were we to agree with appellant that Sharp's word and the set-up call were insufficient to establish probable cause, Sharp's information was surely validated when appellant appeared at the time and place Sharp said he would. Consequently, there was probable cause for appellant's arrest and the cocaine seized from his truck was admissible as found either incident to arrest or would have been inevitably discovered in an inventory search. Accordingly, appellant's eleventh assignment of error is not well-taken.
 {¶ 77} Appellant, in his sixth assignment of error, asserts that cumulative error deprived him of a reliable verdict. Since we have found no other errors in the trial, there is no "cumulative" effect. Accordingly, appellant's sixth assignment of error is not well-taken.
Sentencing
 {¶ 78} In his seventh and eighth assignments of error, appellant complains that major drug offender specifications pursuant to R.C.2941.1410 resulted in the unconstitutional extension of his incarceration beyond the statutory maximum. Such sentence enhancement without submitting the question to a jury violates a defendant's Sixth Amendment rights to a trial by jury, according to appellant. In support of this proposition, appellant cites Apprendi v. New Jersey (2000), 530 U.S. 466.
 {¶ 79} The argument appellant advances here was considered and rejected in State v. Elkins, 148 Ohio App.3d 370, 2002-Ohio-2914, which held, at ¶ 20, that a major offender specification under R.C.2941.1410 is expressly dependent on a jury finding that the amount of the drug possessed or sold by a defendant was in excess of the amount specified in R.C. 2929.01(X), in excess of 1,000 grams of cocaine in this case.
 {¶ 80} The Elkins reasoning is sound and fully applicable to this matter. Accordingly, appellant's seventh and eighth assignments of error are not well-taken.
 {¶ 81} In his tenth assignment of error, appellant asserts that his trial counsel was ineffective for failing to object to the Apprendi
violation. As we have indicated, an Apprendi violation did not occur in this matter. Accordingly, appellant's tenth assignment of error is not well-taken.
 {¶ 82} In his ninth assignment of error, appellant complains that the trial court erred when it sentenced him for both trafficking and possession of cocaine when the cocaine at issue was the same.
 {¶ 83} In effect, appellant argues that possession of cocaine and trafficking in cocaine are allied offenses of similar import and that, pursuant to R.C. 2941.24, he should not be held to account for both.
 {¶ 84} Appellant was convicted of possession of drugs in violation of R.C. 2925.11(A) and (C)(4)(f), and trafficking in drugs in violation of R.C. 2925.03(A) and (C)(4)(g). These offenses have been held not to be allied offenses of similar import. State v. Gonzales, 151 Ohio App.3d 160,173, 2002-Ohio-4980, ¶ 37; State v. Johnson (2000),140 Ohio App.3d 385, 390. Accordingly, appellant's ninth assignment of error is not well-taken.
 {¶ 85} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
 JUDGMENT AFFIRMED.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., Arlene Singer, J., CONCUR.