JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Lamont Thompson ("Thompson") filed this delayed appeal, challenging his conviction and sentence for drug trafficking and preparation of drugs for sale. We find no merit to the appeal and affirm.
 {¶ 2} At trial, Cleveland Metropolitan Housing Authority ("CMHA") Detective David Thompson testified that on February 28, 2001, he and his partner, Det. Thomas Azzano, had arranged for a confidential reliable informant ("CRI") to participate in a controlled buy at the CMHA Riverview Estates on West 25th Street. Det. Thompson explained that the area was known for drug activity and, as part of the controlled buy, they had provided the CRI with a "marked"[1] $20 bill and instructed him to purchase drugs. The detectives set up surveillance around the building, approximately 300 feet from the CRI, keeping him in view at all times.
 {¶ 3} Det. Thompson further testified that at approximately 7:35 p.m., Thompson approached the CRI, engaged in a brief conversation, and then the CRI handed Thompson the marked money. Following this exchange, Thompson walked to the side of the building and reappeared a few minutes later with another male, who was later identified as Mario Johnson. Next, Johnson approached the CRI and handed him an object, which was subsequently determined to be .11 grams of crack cocaine. Upon receiving the crack cocaine, the CRI signaled to the detectives that the transaction was completed. The CRI left the scene and met the detectives nearby, while Cleveland police apprehended Thompson and Johnson. Det. Thompson recovered the crack cocaine from the CRI and later recovered the marked $20 from Thompson.
 {¶ 4} On cross-examination, Det. Thompson admitted that he never saw Thompson possess the crack cocaine or hand it to the CRI. However, he explained that it is common for drug dealers to work in teams, with one person handling the drugs while the other person handles the money.
 {¶ 5} Det. Azzano corroborated Det. Thompson's testimony. He reiterated that the CRI remained in their view at all times and that the area was illuminated from the surrounding neighborhood lights. He further stated that Thompson took the marked money from the CRI and Johnson delivered the drugs to the CRI.
 {¶ 6} At the close of the State's case, Thompson moved for a Crim.R. 29 acquittal of all the charges. The court granted the motion as to the fourth count for possession of criminal tools.
 {¶ 7} Thompson denied any involvement with the alleged drug transaction. He stated that he and Johnson had been friends for a number of years and on the day of the incident, he was walking home from a bar when he spotted Johnson standing on the corner of West 25th and Franklin. He further testified that he approached Johnson and asked him about the money he owed him from a series of poker games. He claimed that Johnson gave him $20, which later turned out to be the marked money. On cross-examination, Thompson denied ever encountering any other person, including the CRI, and further stated that the detectives lied about seeing him take money from the CRI. Additionally, Thompson admitted that he had a criminal record, including multiple convictions for drug-related felonies.
 {¶ 8} After the jury found Thompson guilty on all three counts, the trial court dismissed the possession of drugs count and sentenced him to one year in prison for drug trafficking and imposed four years of community controlled sanctions for the preparation of drugs for sale conviction.
 {¶ 9} Thompson appeals, raising six assignments of error.
 Sufficiency and Weight of the Evidence {¶ 10} In his first and second assignments of error, Thompson argues that the verdict is not supported by sufficient evidence or the weight of the evidence because the State failed to prove that he "knowingly" trafficked drugs or prepared drugs for sale. We disagree.
 {¶ 11} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."
 {¶ 12} See, also, State v. Apanovitch (1987),33 Ohio St.3d 19, 23; State v. Davis (1988), 49 Ohio App.3d 109, 113.Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt. (Jackson v. Virginia [1979], 443 U.S. 307, followed.)"
 {¶ 13} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52:
" * * * Weight of the evidence concerns the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief." (Citations omitted).
" * * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." (Citations omitted).
 {¶ 14} Thompson was convicted of drug trafficking under R.C.2925.03(A)(1) and preparation of drugs for sale under R.C.2925.03 (A)(2). The statute provides in pertinent part:
"(A) No person shall knowingly do any of the following:
 Sell or offer to sell a controlled substance;
 Prepare for shipment, ship, transport, deliver, prepare fordistribution, or distribute a controlled substance, when theoffender knows or has reasonable cause to believe that thecontrolled substance is intended for sale or resale by theoffender or another person."
 {¶ 15} Thompson contends that none of the convictions should stand because the State failed to produce any evidence that he acted "knowingly" in the trafficking of drugs or the preparation of drugs for sale. He argues that the evidence proved that Mario Johnson, rather than himself, delivered the drugs to the CRI. Further, Thompson argues that the testimony of the detectives is not credible because they observed the alleged drug transaction in the dark from 300 feet away. He denies any involvement with the drugs and claims that the evidence simply demonstrates that he was at the wrong place at the wrong time. Thompson's arguments, however, are without merit.
 {¶ 16} In the instant case, the detectives testified that Thompson engaged in a brief conversation with the CRI, collected money from him, retreated to the side of the building, and returned minutes later with Mario Johnson. The detectives further testified that they had a clear view of the CRI and that Mario Johnson handed the CRI an object, which was later determined to be crack cocaine. Finally, it is undisputed that the marked money was found on Thompson when he was arrested.
 {¶ 17} Pursuant to R.C. 2923.03:
"(A) No person, acting with the kind of culpability requiredfor the commission of an offense, shall * * *:
* *
Aid or abet another in committing the offense;
 Conspire with another to commit the offense * * *;
* *
(F) Whoever violates this section is guilty of complicity inthe commission of an offense, and shall be prosecuted andpunished as if he were a principal offender. A charge ofcomplicity may be stated in terms of this section, or in terms ofthe principal offense."
 {¶ 18} The detectives' testimony, coupled with the marked money found on Thompson, was sufficient to demonstrate that Thompson knowingly prepared the drugs for delivery and, further, that he offered to sell the drugs to the CRI. Although Thompson did not deliver the drugs to the CRI, the evidence was sufficient to demonstrate that he aided and abetted Mario Johnson in trafficking of the drug and the preparation of its sale.
 {¶ 19} Likewise, we find that the verdict was not against the manifest weight of the evidence. Although Thompson denied any involvement with the CRI or the drug transaction, the jury obviously found the detectives' testimony more credible. Given Johnson's extensive felony record of drug-related crimes and his own self-interest in the outcome of the trial, we cannot say that the jury clearly lost its way by finding his testimony less credible. Rather, we find substantial, competent, and credible evidence to support the jury's verdict.
 {¶ 20} Accordingly, Thompson's first and second assignments of error are overruled.
 Consecutive Sentences {¶ 21} Thompson argues in his third assignment of error that the trial court erred by imposing consecutive sentences because it neither made the required statutory findings nor stated its reasons on the record. Specifically, Thompson contends that the trial court failed to comply with R.C. 2929.19(B)(2)(c) and2929.14(E)(4).
 {¶ 22} We find this argument lacks merit because Thompson was not sentenced to consecutive prison terms. Rather, he was sentenced to one year in prison for drug trafficking and four years of community controlled sanctions for preparation of drugs for sale. The requirement of making statutory findings and providing reasons for such findings pertains only to the imposition of consecutive prison sentences. See, R.C.2929.14(E)(4) and 2929.19(B)(2)(c). Indeed, whenever a trial court imposes community controlled sanctions and a prison term for two different counts, the community controlled sanctions would not begin until after the defendant was released from prison.
 {¶ 23} Accordingly, Thompson's third assignment of error is overruled.
 Maximum Sentence {¶ 24} In his fourth assignment of error, Thompson contends that the trial court erred by imposing the maximum one-year sentence on the drug trafficking count. Specifically, he argues that the trial court failed to state its reasons for the imposition of the sentence. We disagree.
 {¶ 25} R.C. 2929.14(C) allows the sentencing court to impose a maximum sentence on an offender under certain circumstances. InState v. Edmonson (1999), 86 Ohio St.3d 324, 329, the Ohio Supreme Court determined that in order to lawfully impose the maximum term, the record must reflect that the trial court imposed the maximum sentence after having first found that the offender satisfied one of the criteria set forth in R.C.2929.14(C). As pertinent to this appeal, R.C. 2929.14(C) permits the court to impose a maximum sentence "upon offenders who committed the worst form of the offense" or "upon offenders who pose the greatest likelihood of committing future crimes."
 {¶ 26} R.C. 2929.19(B)(2)(d) further requires that the trial court "make a finding that gives its reasons for selecting the sentence imposed[.]" Edmonson, supra, at 328. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings.State v. Hollander (2001), 144 Ohio App.3d 565, 569. Moreover, the trial court must make oral findings on the record at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463, 469,2003-Ohio-4165. See, also, State v. Burgin, Hamilton App. No. C-020755, 2003-Ohio-4963.
 {¶ 27} Here, the trial court found that Thompson had committed the worst form of the offense and that he posed the greatest likelihood of committing future crimes. Contrary to Thompson's assertion, we find that the record reflects that the trial court provided its reasons for such findings. In accordance with R.C. 2929.12(C), the trial court correctly reasoned that "location" of the drug transaction was a relevant factor based on the circumstances of the case. In finding that Thompson committed the worst form of the offense, the trial court specifically commented:
"The crime was committed in a place that's devastated by drugsales.
* * *
I think selling these drugs on the street corner — anyplace —but when it's in an area that's already ripped apart becausethere are poor people who live there, and you are destroyingpublic housing, as well as violating the law — and, you know, Idon't think there's any good place * * * to sell drugs, but Iunderstand maybe some people at a party may sell it to theirfriends or something like that — the people who stand out on thestreets and do this and turn the streets into a supermarket withthis stuff, as far as I'm concerned, are at the top of the listas far as the worst form of this offense."
 {¶ 28} Although this stated finding and reasoning alone is sufficient to impose a maximum sentence, the trial court further found that Thompson posed the greatest likelihood of committing future crimes and stated its reasons on the record. Specifically, the trial court stated:
"Now, let me say that the record shows that you are 25 yearsold. You've got nine adult felony convictions. You have been toODYS. You have been to the penitentiary twice.
 You haven't held what I would consider a legitimate job. AlsoI have every reason to believe that you are drug dependent andhave been drug dependent despite your denial.
 On that basis, I certainly come to the conclusion that you arein the very highest category of people who have the greatestlikelihood of continuing to commit crimes."
 {¶ 29} Based on this reasoning and the finding of three separate R.C. 2929.12(D) factors, i.e., history of criminal convictions, unfavorable response to previous prison sentences, and denial of drug problem, we find that the trial court's determination that Thompson posed the greatest likelihood of committing future crimes is supported by clear and convincing evidence.
 {¶ 30} Accordingly, Thompson's fourth assignment of error is overruled.
 Allied Offenses {¶ 31} Thompson contends in his fifth assignment of error that the trial court erroneously sentenced him for both drug trafficking and preparation of drugs for sale. He argues that these two offenses should have merged. We disagree.
 {¶ 32} R.C. 2941.25(A) states, "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may beconvicted of only one." (Emphasis added.)
 {¶ 33} In State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court explained that offenses are of similar import if the elements of each crime in the abstract "correspond to such a degree that the commission of one crime will result in the commission of the other." Id. at 638, quoting State v. Jones
(1997), 78 Ohio St.3d 12, 14. In applying this definition to the offenses of drug trafficking under R.C. 2925.03(A)(1) and preparation of drugs for sale under R.C. 2925.03(A)(2), this court has consistently held that they are not allied offenses. See, e.g., State v. Washington, Cuyahoga App. No. 80418, 2002-Ohio-5834; State v. Fort, Cuyahoga App. No. 80604, 2002-Ohio-5068; State v. Sloan, Cuyahoga App. No. 79832, 2002-Ohio-2669; State v. Hudson, Cuyahoga App. No. 79010, 2002-Ohio-1408. Specifically, this court has reasoned that the preparation of drugs for sale does not necessarily result in the sale of the drugs. Accordingly, we find that Thompson's argument lacks merit.
 {¶ 34} Thompson's fifth assignment of error is overruled.
 Double Jeopardy {¶ 35} In his last assignment of error, Thompson argues that his convictions for both drug trafficking and preparation of drugs for sale constitutes double jeopardy.
 {¶ 36} The double jeopardy clause of the Fifth Amendment protects against multiple punishments for the same offense.State v. Moss (1982), 69 Ohio St.2d 515, 518.
 {¶ 37} Thompson argues that because the two offenses are allied offenses, he was essentially punished for the same offense twice in violation of the Fifth Amendment. Because we have already found that the two offenses are not allied offenses, and, therefore, constitute separate offenses, this argument lacks merit. See, State v. Cheney-Shaw (Aug. 31, 2000), Cuyahoga App. Nos. 76828, 76829. Thus, we find that the trial court's imposition of a separate sentence for each offense does not constitute double jeopardy.
 {¶ 38} Thompson's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J. Concurs.
 Diane Karpinski, J. Concurs (See separate ConcurringOpinion).
[1] The money is "marked" by recording the serial numbers for later identification.