JOURNAL ENTRY AND OPINION
{¶ 1} Michel Abboud ("Abboud") appeals his conviction and sentence imposed in Cuyahoga County Common Pleas Court. Abboud argues that the trial court made several errors including failing to excuse a biased juror, admitting impermissible hearsay evidence, failing to grant his motion for acquittal, and in depriving Abboud of a fair trial and effective assistance of counsel. Abboud also argues that his sentence violated double jeopardy and due process. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} The facts as set forth by this Court in State v. Abboud,
Cuyahoga App. No. 80251, 2002-Ohio-4436, are identical to the facts elicited during the present case and are as follows:
"The victims, Flavia DeSousa-Meza [(`Flavia')] and Alcides Meza[(`Alcides')], were Spanish-speaking Argentine nationals. At the time ofthe offenses, the two were living together (they have since married) andwere preparing to move back to Argentina as their visas had expired andthey were staying in the United States illegally. Flavia worked as ahousekeeper for Abboud, and on the day of the offenses, told Abboud'swife * * *, Katia Abboud [(`Katia')], that she was quitting at the end ofthe day. A short while later, Katia confronted Flavia and accused her ofstealing money from a bank that had been kept in the closet. The bankallegedly held $5,000 in coins and bills.
 Flavia denied taking any money. Katia emptied the contents of the bankand made Flavia count out the money. As Flavia counted the money, Abboudentered the house. After learning that Katia had accused Flavia oftheft, Abboud placed a telephone call to the North Randall PoliceDepartment. Abboud often employed off-duty North Randall police officersas security guards in his business * * *. When the North Randall PoliceDepartment answered the call, Abboud identified himself simply as`Michel' and said that he wanted a sergeant to come to the house. Whenthe sergeant arrived, Abboud told him that Flavia had stolen money.Abboud rejected the officer's offer to arrest Flavia, saying instead thatFlavia's boyfriend Alcides would be bringing the money. The sergeant leftthe house.
 Abboud then called for North Randall police officer Brad Dibacco[(`Dibacco')]. Dibacco arrived in full uniform and asked Flavia if shestole the money. Flustered by the theft accusation and conscious of howthe police handled like-matters in her own country, Flavia agreed thatshe took the money. [Abboud and Dibacco] permitted [her] to call Alcidesand ask him for help. Alcides said Flavia told him it was either money orjail. Katia grabbed the telephone away, and told Alcides that if Flaviadid not return the money, she would not be able to go home. Katiadirected Abboud to Flavia's purse and he took her keys. He and Dibaccopicked up another person, * * *, Michael Shaaya [("Shaaya")], and drove toAlcides's apartment. Katia remained with Flavia and prevented her fromleaving.
 In the meantime, Alcides frantically tried to raise money and managedto convince his employer to loan him $2,000. He then called friends toarrange a ride to the city of Westlake, where his employer lived. Goingdown to his apartment building parking lot to wait for his ride, Alcidessaw Abboud, Dibacco and Shaaya arrive. Abboud had Flavia's keys and usedthem to let himself into the apartment. When Alcides tried to stop them,Dibacco put his hand on his holstered weapon and pushed Alcides aside.Dibacco then drew his weapon and entered the apartment. Abboud andDibacco went through the packed bags (Alcides and Flavia were scheduledto depart for Argentina within two days) looking for money. Shaaya toldAlcides that if he paid the money there would be no problem. Alcideswanted to talk to Flavia, but the men would not let him. He told themthat he only had $500.
 By this time, Alcides' friends arrived. They collectively testifiedthat the contents of Alcides' luggage had been strewn across theapartment by the three men. One of the friends asked the officer if he hada search warrant to enter the premises, and Dibacco replied that he didnot need a search warrant because he was going to cut a deal * * *.Throughout the time in the apartment, the friends said that the amount ofmoney demanded by Abboud went from $1,500 to $3,000. All of the friendswanted to speak with Flavia to get her side of the story, but Abboud andDibacco would not permit them to call. When one of the friends said thatshe was going to call the Cleveland Police, Dibacco said he would in turncall the FBI.
 The parties then left to travel to Westlake. Abboud did not stopAlcides' friends from coming, and they formed a caravan. During thisride, Alcides gave Abboud the $500. During the ride to Westlake, one ofthe friends called the North Randall Police Department and spoke to the ** * Lieutenant Rose [("Rose")]. She explained to Rose that a NorthRandall police officer was involved in a kidnapping. Rose said that hewas unaware of any officer in that area and told the caller she shouldcall 911 or the Cleveland Police Department and have them stop the car.
 The Westlake Police Department then received a call informing themabout a possible scam involving a police officer and Abboud. An officerwas dispatched to stop the cars and found that something unusual wasoccurring. Panicking, Alcides told the police that his wife was beingheld by her employer because she had been accused of stealing and theemployer was in the process of getting his money back. Dibacco did mostof the talking for Abboud since Abboud said that he spoke very littleEnglish. Dibacco told the Westlake police that he was along to facilitatethe transfer of money in order to settle a theft offense. When asked if apolice report had been filed, Dibacco replied in the negative, saying thatthings are done different on the east side. He told the Westlake policethe (sic) Flavia was still at Abboud's house, but not being watched by apolice officer. When the Westlake police asked how he could be sure thatFlavia would not flee in the absence of a police officer, Dibacco saidthat he wasn't worried because there was somebody watching her.
 The Westlake police took everyone to the police station. Dibacco keptrepeating that he was `fucked' and would lose his job over the incident.The Westlake police made several calls to the North Randall police toconfirm Dibacco's employment and spoke with Rose. During the intervalbetween calls, Rose found out that one of his sergeants had gone to theAbboud house and concluded that the Abbouds wished to give Flavia anopportunity to repay the money she allegedly stole. Upon hearing thatAlcides was accusing the Abbouds of a possible kidnapping, Rosediscretely dispatched two officers to the Abboud house. They returnedwith Flavia a short time later.
 The Westlake police had a Spanish-speaking officer call the NorthRandall police station and speak with Flavia. The police recorded thetelephone call. When asked to explain the situation, Flavia said * * *the owner (of the house) said that $5,000 is missing, but that I onlytook $2,000. She also said that Katia had told me to sit there andcouldn't go anywhere. After being transported to Westlake, Flavia gave awritten statement in which she claimed to have admitted telling theAbbouds that she took the money because she did not want to go to jail.She also told the Spanish-speaking officer that she did not take anymoney.
 The Westlake police also questioned Abboud, and found him evasive. Hecould not respond to specific questions such as why Flavia was at theAbboud house when they needed to go to her apartment to get the money.The Westlake police found Alcides and Flavia's apartment key on Abboud,and they later confirmed that it worked the lock to their apartment. Thepolice took Dibacco's police weapon and found it operable.
 The Abbouds considered themselves the victims of a theft offense andcharacterized their efforts to obtain money from Flavia and Alcides ascharitable in nature. They knew that both Flavia and Alcides were in theUnited States on expired visas, and if they were able to regain theirmoney without police involvement, it would not have prevented any delayin the departure to Argentina."
 {¶ 3} The Cuyahoga County Grand Jury indicted Abboud charging him with kidnapping, aggravated robbery, aggravated burglary, extortion and coercion. The first four charges contained firearm specifications. The jury found Abboud guilty of kidnapping, aggravated robbery, aggravated burglary, coercion, and the attendant gun specifications. Abboud appealed and this court reversed and remanded the case for a new trial. Abboud,
supra.
 {¶ 4} At the close of the second trial, the jury found Abboud not guilty of kidnapping but guilty of the lesser included offense of unlawful restraint, a third degree misdemeanor, not guilty of aggravated robbery, guilty of aggravated burglary with a three-year firearm specification, a first degree felony, and guilty of coercion, a second degree misdemeanor. The trial court sentenced Abboud to ninety days in the county jail for unlawful restraint; five years in prison for aggravated burglary, to run consecutive to the three-year gun specification; and ninety days for coercion. The trial court ordered all counts to run concurrent with each other but consecutive with the gun specification for a total of eight years of imprisonment. Abboud appeals, raising the twelve assignments of error contained in the appendix to this opinion.
 {¶ 5} In his first and second assignments of error, Abboud argues that juror number nine concealed information during voir dire that had Abboud known, he would have challenged the juror for cause or used a peremptory challenge, and that the trial court failed to conduct a proper voir dire inquiry and to excuse the juror. We disagree.
 {¶ 6} The decision to disqualify a juror for bias is a discretionary function of the trial court and will not be disturbed on appeal absent an abuse of discretion. Berk v. Matthews (1990), 53 Ohio St.3d 161. "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219. When applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge. Berk, supra.
 {¶ 7} A court may infer bias if it finds deliberate concealment. However, if the concealment was unintentional, the appellant must show that the juror was actually biased. Zerka v. Green (C.A.6, 1995),49 F.3d 1181; State v. Williams (1997), 79 Ohio St.3d 1, 1997-Ohio-407.
 {¶ 8} During voir dire in the present case, juror number nine responded in the negative when asked if he knew any of the parties or issues involved in the case. However, after opening statements, juror number nine revealed to the trial court that after hearing additional facts of the case, he remembered being in one of Abboud's stores. The juror further revealed that he heard "an officer in North Randall had got in some trouble about going out to Westlake for something. I can't remember exactly what it was, but he ended up losing his job over it, and I think he did jail time for it also." (Tr. at 178.)
 {¶ 9} We do not find that juror number nine intentionally concealed information from the attorneys or the trial court. It is clear from the trial court transcript that opening statements jogged juror number nine's memory. Moreover, we find that Abboud failed to demonstrate any bias on the part of the juror. During questioning by both attorneys and the trial court, juror number nine repeatedly stated that he could put aside any information he may have remembered and decide the case solely from the evidence put forth on the stand. The juror also repeatedly stated that he could remain fair and impartial.
 {¶ 10} In further support of this argument, Abboud argues that the trial court did not perform an adequate voir dire inquiry. The scope of voir dire is within the discretion of the trial court. State v. Bedford
(1988), 39 Ohio St.3d 122. After reviewing the trial court's voir dire and questioning of juror number nine, we do not find that the trial court unreasonably or arbitrarily limited examination or investigation.
 {¶ 11} Accordingly, we find that the trial court did not abuse its discretion in allowing juror number nine to remain on the panel.
 {¶ 12} Abboud's first and second assignments of error are overruled.
 {¶ 13} In his third assignment of error, Abboud argues that the trial court erred by allowing inadmissible hearsay testimony into evidence, which violated his right to confrontation. In putting forth this argument, Abboud fails to cite to any authority for this claim. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). State v. Martin (July 12, 1999), Warren App. No. CA99-01-003, 1999 Ohio App. LEXIS 3266, citingMeerhoff v. Huntington Mortgage Co. (1995), 103 Ohio App.3d 164, 169;Siemientkowski v. State Farm Insurance, Cuyahoga App. No. 85323, 2005-Ohio-4295. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v.Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028.
 {¶ 14} Abboud failed to cite to any legal authority in support of his argument, a failure that allows this Court to disregard this assigned error. App.R. 12(A)(2); App.R. 16(A)(7). Because Abboud failed to comply with Appellate Rule 16(A)(7), we decline to review this assigned error.
 {¶ 15} Abboud's third assignment of error is overruled.
 {¶ 16} In his fourth, fifth, sixth, and seventh assignments of error Abboud argues that the trial court's alleged negative comments and hostile attitude towards Abboud and his counsel denied him his right to a fair trial and effective assistance of counsel. We disagree.
 {¶ 17} A trial court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. Evid. R. 611(A), R.C.2945.03. Evid. R. 611 is essentially a rule of control, granting the trial court discretion to control the mode and order of witness interrogation and evidence presentation to achieve the goals listed therein. State v. Davis (1992), 79 Ohio App.3d 450. Because the trial court's power under Evid.R. 611 is discretionary, an appellate court reviewing the trial court's comments must determine whether the trial court abused that discretion. Davis, supra.
 {¶ 18} The law of Ohio clearly establishes that speculation and possibilities are not enough to support a claim of judicial bias, and instead requires that an appellant support such claims with a showing of prejudice or that the jury was aware of such bias. See State v. Wade
(1978), 53 Ohio St.2d 182, paragraph two of the syllabus, vacated on other grounds (1978), 438 U.S. 911 (challenged statements and actions of the trial judge in a criminal case will not justify a reversal of the conviction where the defendant has failed in light of the circumstances under which the incident occurred to demonstrate prejudice).
 {¶ 19} In the present case, Abboud has not demonstrated the required prejudice. Throughout these assigned errors, Abboud merely alleges that the cited statements deprived him of his right to a fair trial and that the verdicts against him should be vacated.
 {¶ 20} Nonetheless, even assuming he has met this required burden, several of the cited passages occurred outside of the presence of the jury, and other comments cited to by Abboud in the trial transcript simply were not present on the cited pages. Specifically, on page 258 of the trial transcript, Abboud alleges that the trial court told his counsel to "sit down." On page 603 of the transcript Abboud argues that the trial court again told his counsel to "sit down Mr. Smaili, sit down." Finally, on page 621 of the transcript, Abboud claims that the trial court said the following, "counsel, I think all our jurors understand what the weather is like in Cuyahoga County." A review of the transcript shows that no such exchanges took place as cited by Abboud.
 {¶ 21} The comments that were made in front of the jury solely related to the trial court's discretionary power under Evid.R. 611. After reviewing the passages, we cannot say that the trial court abused its discretion in making the cited comments and, therefore, the trial court did not deprive Abboud of a fair trial.
 {¶ 22} Abboud also claims that the trial court's comments deprived him of effective assistance of his trial counsel.
 {¶ 23} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,
at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at 143.
 {¶ 24} In determining whether counsel's performance fell below an objective standard of reasonableness, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 25} In the present case, Abboud has not shown either of the elements required to prevail on a claim of ineffective assistance of counsel. Abboud merely argues that the trial court's comments caused defense counsel's performance to be "not as effective as it could have been." Such allegations are far from the required showing that trial counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,
supra. Without showing deficiency, Abboud cannot even argue prejudice. Therefore, we decline to find that Abboud's trial counsel rendered ineffective assistance.
 {¶ 26} Accordingly, Abboud's fourth, fifth, sixth, and seventh assignments of error are overruled.
 {¶ 27} In his eighth and tenth assignments of error, Abboud argues that the trial court erred in finding witnesses Alcides and Flavia unavailable, rendering their prior recorded testimony inadmissible. We disagree.
 {¶ 28} Under the hearsay rules of evidence, former testimony may be excepted if it is demonstrated that the declarant is unavailable. Evid.R. 804(B)(1). A witness may be declared unavailable if the witness is "absent from the hearing and the proponent of the declarant's statement has been unable to secure the declarant's attendance * * * by process or other reasonable means." Evid.R. 804(A)(5). In State v. Jester
(1987), 32 Ohio St.3d 147, 154, the Supreme Court held that prior recorded testimony may be introduced if (1) after a good faith effort to secure the witness's presence at trial, the witness is shown to be unavailable and, (2) there must have been an opportunity for cross-examination and there must be present adequate indicia of reliability such that a statement may be placed before the jury though there is no confrontation of the declarant. See, also, State v. Sawyer,
Cuyahoga App. No. 79197, 2002-Ohio-1095.
 {¶ 29} In the present case, Westlake Detective Escalante ("Escalante") made an application to secure the attendance of Alcides and Flavia, who had since returned to Argentina. Escalante filed an application with the INS to allow Alcides and Flavia to appear in the United States to testify. The INS granted Alcides, Flavia, and their six-month-old child significant public benefit parole status. Escalante then emailed the subpoenas for the witnesses to the Argentinian Embassy. Escalante obtained flight reservations and wired $300.00 to Alcides so he could purchase visas at the Embassy. However, when Alcides arrived at the Embassy to secure his visas, the INS had not sent the proper documents to the Embassy. Further difficulties ensued and Alcides, Flavia, and their child did not arrive in the United States to testify for this trial. Escalante attempted to contact the family in Argentina but was unsuccessful.
 {¶ 30} In response, Abboud argues that the trial court should have extradited both witnesses under the Treaty with Argentina on Mutual Legal Assistance in Criminal Matters, Treaty Document at 102-18. Abboud's argument is without merit as the law in Ohio is clear, that the proponent of the prior testimony must only demonstrate a good faith effort to secure the testimony for trial. See Sawyer, supra; Jester, supra; Statev. Carpenter (1997), 122 Ohio App.3d 16, 1997 Ohio App. LEXIS 3024.
 {¶ 31} The trial court correctly found that the State acted in good faith in its attempts to procure the witnesses for trial. Moreover, the witnesses' testimony in the first trial corresponded closely with that given by State's witnesses Navarro and Lopez. All parties testified that Abboud instructed Katia to detain Flavia while Abboud went to Alcides's apartment, entered the apartment without permission, and searched the apartment in an attempt to secure monies allegedly owed to him.
 {¶ 32} Additionally, there is no question that both parties gave sworn testimony in the first trial and were subjected to cross-examination by two separate defense counsels. We find the recorded testimony of both witnesses presents the required degree of reliability. Therefore, the trial court did not err in declaring Alcides and Flavia unavailable for the second trial and in reading their prior recorded testimony into evidence.
 {¶ 33} Abboud's eighth and tenth assignments of error are overruled.
 {¶ 34} In his ninth assignment of error, Abboud argues that the trial court erred in failing to sua sponte declare a mistrial and in failing to grant Abboud's motion for a mistrial. However, Abboud made no further argument in support of this contention nor did he cite to any legal authority.
 {¶ 35} As stated in this Court's discussion of Abboud's third assigned error, an appellate court may disregard an assignment of error pursuant to App. R. 12(A)(2) if an appellate fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). Martin supra;Meerhoff supra; Siemientkowski supra.
 {¶ 36} Abboud failed to support his argument with legal authority as required by App. R. 16(A), therefore, we decline to review this assigned error.
 {¶ 37} Abboud's ninth assignment of error is overruled.
 {¶ 38} In his eleventh assignment of error, Abboud argues that the trial court violated double jeopardy and his right to due process when it sentenced him to a more severe sentence than given in his first trial. We disagree.
 {¶ 39} A trial court violates the Due Process Clause of the Fourteenth Amendment when it resentences a defendant to a harsher sentence when motivated by vindictive retaliation. State v. Chandler, Cuyahoga App. No. 83629, 2004-Ohio-2988. A presumption of vindictiveness arises when the same judge resentences a defendant to a harsher sentence following a successful appeal. Id. However, that presumption does not apply when the resentencing judge is different than the original sentencing judge.Chandler, supra; State v. Douse, Cuyahoga App. No. 82008, 2003-Ohio-5238, citing State v. Gonzales, 151 Ohio App.3d 160, 2002-Ohio-4937; Lodi v.McMasters (1986), 31 Ohio App.3d 275, 277.
 {¶ 40} In Abboud I, the trial court sentenced Abboud to a base sentence of three years each for kidnapping, aggravated robbery, and aggravated burglary to run consecutive with the three-year firearm specifications for a total prison term of six years. In Abboud II, the trial court sentenced Abboud to a base sentence of five years to run consecutive with the three-year firearm specification for a total prison term of eight years. However, the trial judge who resentenced Abboud was different from the judge who originally sentenced him. Therefore, the presumption of vindictiveness is absent.
 {¶ 41} "Even though a presumption of vindictiveness does not apply, a defendant may nevertheless seek to demonstrate, from the record, that the harsher sentence is the product of judicial vindictiveness." State v.Johnson, Montgomery App. No. 18937, 2002-Ohio-4339. Abboud has failed to demonstrate from the record that the harsher sentence is the product of judicial vindictiveness.
 {¶ 42} The vast majority of the trial court's comments cited to by Abboud in support of his claim of judicial vindictiveness were addressed to Abboud's counsel, not the defendant. Moreover, the cited comments directed at Abboud concerned topics that Abboud's counsel raised prior to sentencing. We find that the trial court properly reviewed the presentence investigation report and proceeded to sentence Abboud within the applicable statutory framework.
 {¶ 43} Accordingly, Abboud's eleventh assignment of error is overruled.
 {¶ 44} In his twelfth and final assignment of error, Abboud argues that the trial court erred when it denied the motion for judgment of acquittal made at the close of the evidence and post trial. We disagree.
 {¶ 45} The standard of review with regard to a Crim.R. 29(A) is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
"Pursuant to Crim. R. 29(A), a court shall not order an entry ofjudgment of acquittal if the evidence is such that reasonable minds canreach different conclusions as to whether each material element of acrime has been proved beyond a reasonable doubt."
 {¶ 46} See, also State v. Thompson, Cuyahoga App. No. 83382, 2004-Ohio-2969; State v. Davis (1988), 49 Ohio App.3d 109. Bridgeman
must be interpreted in light of the sufficiency test outlined in Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt." (Citation omitted.)
 {¶ 47} In the present case, the jury returned a verdict of guilty to unlawful restraint pursuant to R.C. 2905.03 which provides in pertinent part:
"(A) No person, without privilege to do so, shall knowingly restrainanother of his liberty."
 {¶ 48} The jury also found Abboud guilty of aggravated robbery with
 {¶ 49} a three-year firearm specification pursuant to R.C. 2911.11, which provides:
"(A) No person, by force, stealth, or deception, shall trespass in anoccupied structure * * *, when another person other than an accomplice ofthe offender is present, with purpose to commit in the structure * * *any criminal offense if * * *:
* * *
(2) The offender has a deadly weapon or dangerous ordnance on or aboutthe offender's person or under the offender's control."
 {¶ 50} Lastly, the jury found Abboud guilty of coercion pursuant to
 {¶ 51} R.C. 2905.12, which provides:
"(A) No person, with purpose to coerce another into taking orrefraining from action concerning which the other person has a legalfreedom of choice shall * * *:
* * *
(4) Institute or threaten criminal proceedings against any person;
 (5) Take, withhold, or threaten to take or withhold official action, orcause or threaten to cause official action to be taken or withheld."
 {¶ 52} The record demonstrates the existence of sufficient evidence to support each of Abboud's three convictions. During trial, the evidence showed that Abboud did not allow Flavia to leave his residence while he went to get money from Alcides. Additionally, the evidence showed that Abboud threatened to throw Flavia in jail if she did not admit to stealing the money. Finally, the evidence showed that Abboud arrived at Alcides's residence with Dibacco, a uniformed and armed police officer working for Abboud; both Abboud and Dibacco entered Alcides's residence without permission and searched the residence in an attempt to recoup allegedly stolen monies.
 {¶ 53} After reviewing the entire record, we find that a rational fact finder could have found the essential elements of each crime proven beyond a reasonable doubt.
 {¶ 54} Abboud's twelfth and final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, .J., concurs.
 Dyke, P.J., Concurs in Judgment only
 Appendix A Assignments of Error:
 "I. Given the belated revelation (by a sitting juror) that showed hehad failed to disclose, during voir dire, facts that bore on hissuitability to serve as a juror in this case, the court erred when hefailed to conduct a proper inquiry and when he failed to excuse thisjuror-especially since the defense objected to his presence on the jury.
 II. The court erred, or at least abused its discretion, when it failedto excuse a particular juror who belatedly revealed facts that hadpreviously not been revealed (despite questions that should have elicitedthis information), which unrevealed information bore on his suitabilityto be a juror from the defendant's perspective.
 III. The court erred and the defendant's right of confrontation wastraversed and violated in the wake of the admission, over objection, ofconsiderable inadmissible testimony.
 IV. Appellant was denied due process, and a fair trial, in the wake ofthe court's repeated condemnatory comments directed at defense counsel.
 V. Given the trial court's frequent and repeated denigrations of thedefense and defense counsel were such that it perforce, indeedinescapably, created an impression of partisanship, it also follows thatthe appellant was deprived of the effective assistance of counsel.
 VI. The defendant was denied the effective assistance of counsel in thewake of the numerous disparaging remarks made by the court that weredirected at defense counsel during the course of the trial, whichstatements undermined, effectively eroded and unsettled the defendant'scounsel, and otherwise adversely affected the defendant's right to theeffective assistance of counsel.
 VII. The court's "frequent and intense display of outright hostilitytoward defense counsel [whether deserved or not] revealed such antagonismas to deny the defendant a fair trial.
 VIII. The court erred in finding the witnesses Desousa and Mesa were"unavailable," and for that reason prior to recorded testimony wasadmissible.
 IX. The trial court erred when it failed, sua sponte, to declare amistrial, or if not then, it occurred when he failed to grant thedefense's "motion for a mistrial."
 X. The court erred, and the appellant was denied due process, when thecourt arbitrarily, and without a factual basis, ruled that certainwitnesses, absolutely essential to the state's case, were "unavailable,"because they could not have been compelled to appear.
 XI. Given the defendant was acquitted, during his trial, of counts hewas convicted of in his first trial, it follows that the more severesentence imposed herein violated not only the double jeopardy clause, butdue process as well.
 XII. The court erred when it denied the motion for judgment ofacquittal made at the close of the evidence (Rule 29[B], Ohio Rules ofCriminal Procedure) and Post-Trial (ID., 29[C])."