OPINION *Page 2 
{¶ 1} Defendant-Appellant Jerome Douglas ("Douglas") appeals from the November 14, 2007 Judgment Entry of Sentencing of the Court of Common Pleas, Marion County, Ohio, sentencing him to 18 months in prison for his conviction of Trafficking in Cocaine, a felony of the fourth degree in violation of Ohio Revised Code section 2925.03(A)(1) (C)(4), and 12 months in prison for his conviction of Possession of Cocaine, a felony of the fifth degree in violation of Ohio Revised Code section 2925.11(A)(C)(4).
 {¶ 2} On May 30, 2007 a Marion County Grand Jury indicted Douglas on one count of Trafficking in Cocaine, in violation of R.C. 2925.03(A)(1) (C)(4) and one count of Possession of Cocaine in violation of R.C. 2925.11(A)(C)(4). Count One alleged, in relevant part, that "on or about March 28, 2007 [Jerome Douglas aka "Papa"] did knowingly sell or offer to sell a controlled substance . . . cocaine or a compound, mixture, preparation or substance containing cocaine. The Defendant committed the offense within 100 feet of a juvenile . . . regardless of whether the Defendant knew the age of the juvenile or whether the Defendant knew the offense was being committed within 100 feet . . . of the juvenile, or whether the juvenile actually viewed the commission of the offense." Count Two alleged that "on or about May 25, 2007 [Jerome Douglas aka "Papa"] did knowingly obtain, possess, or use a controlled *Page 3 
Substance . . . cocaine, or a compound, mixture, preparation, or substance containing cocaine."
 {¶ 3} On June 4, 2007 Douglas appeared for his arraignment and entered a plea of not guilty to Counts One and Two as contained in the indictment. On July 31, 2007 Douglas filed a motion to suppress all statements he made during interviews conducted by officers of the Marion City Police Department on May 25, 2007. The trial court conducted a hearing on Douglas's motion to suppress on August 6, 2007. On August 7, 2007 the trial court issued a Judgment Entry overruling Douglas's motion to suppress.
 {¶ 4} This matter proceeded to a jury trial on October 18, 2007. At the end of the State's case, Douglas moved for a Criminal Rule 29 Motion for Acquittal on all counts and also moved for a mistrial. The court overruled both of Douglas's motions and the matter proceeded to Douglas's case in chief. However, Douglas declined to present evidence or testimony on his behalf and rested.
 {¶ 5} At the close of all the evidence, the jury found Douglas guilty of Count One, Trafficking in Cocaine in violation of R.C. 2925.03(A)(1)/(C)(4) and guilty of Count Two, Possession of Cocaine in violation of R.C. 2925.03(A)(C)(4).
 {¶ 6} On November 13, 2007 the trial court conducted Douglas's sentencing hearing. The court sentenced Douglas to 18 months in prison for his conviction of Trafficking in Cocaine and 12 months in prison for his conviction of *Page 4 
Possession of Cocaine, to be served consecutively for a total sentence of two years and six months. The court also ordered that Douglas's driver's license was to be suspended for six months and that he pay restitution of $100.00 to MARMET. Douglas was granted 87 days jail time credit.
 {¶ 7} Douglas now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO C.R. 29.
 ASSIGNMENT OF ERROR NO. 2 THE VERDICT OF THE JURY ON BOTH COUNTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION FOR A MISTRIAL WHEN IT WAS ALLOWED TO PRESENT EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS.
 Assignments of Error Nos. 1 and 2 {¶ 8} For ease of discussion, Douglas's first and second assignments of error will be addressed together. In his first assignment of error, Douglas alleges that the trial court improperly overruled his Criminal Rule 29 motion for acquittal. In his second assignment of error, Douglas claims that the jury's verdict was against the manifest weight of the evidence and should be reversed.
 {¶ 9} Crim. R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence in insufficient to *Page 5 
sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 10} The Bridgeman standard must be viewed in light of the sufficiency of evidence test set forth in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph two of the syllabus. State v.Edwards, 3rd Dist. No. 9-03-63, 2004-Ohio-4015. In Jenks, the Ohio Supreme Court held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
 {¶ 11} The defendant may move the court for acquittal "after the evidence on either side is closed." Crim. R. 29(A). When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant `waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." State v. Edwards, supra, citing State v. Brown (1993),90 Ohio App.3d 674, 685, 630 N.E.2d 397.[1] *Page 6 
 {¶ 12} Alternatively, when reviewing whether a verdict is against the manifest weight of the evidence, our function is to determine whether the greater amount of credible evidence supports the verdict. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Specifically, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the fact finder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Andrews, 3rd Dist. No. 1-05-70, 2006-Ohio-3764, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, 78 Ohio St. at 387, 678 N.E.2d 541.
 {¶ 13} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness's testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394
citing State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be *Page 7 
exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175,485 N.E.2d 717.
 {¶ 14} Additionally, it is important to remember that the credibility to be afforded the testimony of witnesses is to be determined by the trier of fact. State v. Blandin, 3rd Dist. No. 1-06-107,2007-Ohio-6418 at ¶ 19 citing State v. Dye (1998), 82 Ohio St.3d 323,329, 695 N.E.2d 763; State v. Frazier (1995), 73 Ohio St.3d 323,652 N.E.2d 1000. The jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 Count One: Aiding and Abetting Trafficking in Cocaine {¶ 15} In the present case, Douglas was convicted of one count of Aiding and Abetting Trafficking in Cocaine, Committed in the Vicinity of a Juvenile. The elements of Trafficking in Cocaine are set forth in R.C. 2925.03(A)(1) which provides that "[n]o person shall knowingly sell or offer to sell a controlled substance."
 {¶ 16} The elements of Complicity are set forth in R.C. 2923.03 which provides, in relevant part, as follows:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 * * *
 Aid or abet another in committing the offense;
 * * * *Page 8 
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
 {¶ 17} A defendant may be charged in an indictment as a principal, but a jury may be instructed on complicity where the evidence at trial reasonably supports a finding that he was an aider or abettor. State v.Gonzales (2002), 151 Ohio App.3d 160, 178, 783 N.E.2d 903. "To constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. * * * In this context, a person aids when he assists another in performing an act, and abets when he incites or encourages an individual to act in a particular manner."Id. at 179 citing State v. Jones (Sept. 27, 1995), 1st
Dist. No. C-940691, unreported. Such participation may be demonstrated by both direct and circumstantial evidence. Id.
 {¶ 18} In the present case, our review of the record reveals that the trial court instructed the jury as follows:
 When two or more persons have the common knowledge or plan to commit a crime, and one does one part and the second performs another, those acting together have the knowledge required for the offense of Trafficking in Cocaine. Further, each person is regarded as if he was the principal offender, and is guilty as if he personally performed every act constituting the offense. In Count One of the indictment the Defendant may be convicted as an aider and abettor. You should find the Defendant guilty if you find that the State has proven beyond a reasonable doubt that on or about March 28, 2007, and in Marion County, Ohio, the Defendant knowingly aided or abetted *Page 9 another in committing the offense as set forth in Count One of the indictment.
 "Knowingly" was previously defined for you.
 "Aid" means to help, assist, or strengthen.
 "Abet" means to encourage, counsel, incite, or assist.
 The Defendant's mere presence at a crime scene is not sufficient to make him an accomplice. The Defendant must have performed some overt act in furtherance of the commission of a crime.
 {¶ 19} At trial, the jury heard the testimony of Detective Andrew Isom ("Isom") of the Marion City Police Department and the Marion Metro Enforcement Task Force ("MARMET"). Isom testified that MARMET entered into a contract with Amanda Patton Estrada ("Amanda") to work as a confidential informant ("CI") to purchase narcotics. Isom testified that Amanda participated in two transactions on March 28, 2007 at Sheree Baker's house located at 729 Kentucky Avenue.[2]
 {¶ 20} Isom testified that when Amanda actually approached the house she was able to be seen on the video and that he was able to have visual surveillance on Amanda prior to her entering Sheree's house. However, Isom testified that before Amanda reached the house, Douglas "showed up in his mother's car" and went into the front door of the house. *Page 10 
 {¶ 21} Isom testified that when Amanda entered the house he listened to the audio to monitor the situation and could tell Douglas was in the house because he could identify Douglas's voice and he saw Douglas enter the house. Isom testified that he heard Douglas make a telephone call and say to someone on the phone "What's up Killer? You got work?" which Isom testified meant "are you on, do you have drugs, or are you selling at this time." Isom testified that Douglas said "they'll be there in five minutes. Isom also testified that when Douglas got off the phone he indicated to Sheree that she "gotta go to your buddy's" and that Douglas said "I'm just trying to hook your friend up" which Isom testified meant "getting somebody drugs" which specifically meant getting Amanda drugs.
 {¶ 22} Isom testified that he then observed Amanda and Sheree leave 729 Kentucky Avenue in Douglas's car and testified that Detectives Utley and Ross followed the car to an address on Farming Street. Isom testified that when Amanda and Sheree returned to the 729 Kentucky Avenue, there was conversation between Sheree, Douglas, and Amanda, and that he heard Douglas give Amanda instructions on how to "cook the powder down."
 {¶ 23} Additionally, Isom testified that State's Exhibit 3 was the audiotape recording of the events occurring on March 28, 2007 and that this exhibit fairly and accurately depicted what he heard through the wire when he was listening to the transaction that day. *Page 11 
 {¶ 24} The jury also heard the testimony of Detective Steve Chase ("Chase") of the Marion City Police Department and MARMET. Chase testified that he was involved in the March 28, 2007 drug transaction at issue in this case, and that his role was to videotape the transaction and monitor the audio traffic. Chase testified that as soon as he and Isom observed Amanda on Kentucky Avenue he "picked her up on the video and started recording at that time." Chase testified that based on a review of the videotape he was able to determine that Douglas entered the house located at 729 Kentucky Avenue. Chase also testified that he observed Sheree and Amanda drive Douglas's car away from Kentucky Avenue. Additionally, Chase testified that State's Exhibit 4 was the videotape recording of the events occurring on March 28, 2007 and that this exhibit fairly and accurately depicted what the video was at the time he was recording the events.
 {¶ 25} Our review of the record also reveals that Amanda testified regarding the March 28, 2007 transaction and her role as a confidential informant. Amanda testified that prior to going to 729 Kentucky Avenue to buy drugs, MARMET officers put a listening device on her. Amanda testified that she went to the house to buy drugs twice on March 28, 2007. Amanda testified that the first *Page 12 
time she went to the house "Papa", "Black Ice", and Sheree were there.[3] During her testimony Amanda identified Douglas as "Papa" and identified him as being present in the courtroom.
 {¶ 26} Specifically regarding her second visit on March 28, 2007 Amanda testified that only Douglas and Sheree were present. Amanda testified that she asked Sheree for some "hard" cocaine, or crack. Amanda testified that Douglas made a telephone call to someone where he said, "[y]ou have some work, can you hook me up." Amanda testified that "work" means crack or cocaine and that "hook you up" means either "I can give you something" or "yeah, I got it" and that Douglas's entire telephone call was all about buying cocaine.
 {¶ 27} Amanda testified that after Douglas made this telephone call, she and Sheree drove Douglas's car to an address on Farming Street to get the drugs. Amanda testified that Sheree went into the house on Farming Street and came back out with powder cocaine. Amanda testified that she paid Sheree $100 for the cocaine. Amanda testified that she and Sheree returned to 729 Kentucky Avenue where Douglas was still at the house. Amanda testified that they had a conversation about "cooking the powder up" and that Douglas said that "he could cook it up for me, it'd only take about five minutes." However, Amanda testified that because the MARMET officers were waiting for her and she wanted to get out *Page 13 
of the house, she did not have Douglas "cook the cocaine up for her." (See also State's Exhibits 14 and 14A reflecting Amanda's written voluntary statements).
 {¶ 28} The jury also heard the testimony of Kenneth Ross ("Ross"), a chemist with the Ohio Bureau of Criminal Identification and Investigation. Ross testified that he analyzed the contraband confiscated from the events occurring on March 28, 2007. (See State's Exhibit 2). Ross testified that Exhibit 2 contained two separate bags of samples which he labeled as 2.1 and 2.2. Ross testified that 2.1 contained powder cocaine, a Schedule II controlled substance weighing 0.9 grams. Ross testified that 2.2 contained sodium bicarbonate, or baking soda. (See also State's Exhibits 9 and 9A).
 {¶ 29} Additionally, regarding the charge of Aiding and Abetting Trafficking in Cocaine, Douglas alleges that the evidence presented at trial did not establish that the sale was "committed in the vicinity of a juvenile." R.C. 2925.01(BB) defines this term and provides as follows:
 An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.
 {¶ 30} Our review of the record reveals that Detective Chase testified regarding the police videotape of the March 28, 2007 drug transaction. Chase testified that the videotape was the "Perimeter Video" of 729 Kentucky Avenue *Page 14 
and that it was the video taken of the outside of the house and the area surrounding the house. (See State's Exhibit 4). Chase testified that this transaction was not complete until the confidential informant had left the house at 729 Kentucky Avenue. Chase also testified that the video shows that when the confidential informant exited the house there was a boy between the ages of nine and ten years old within 20 feet of the house. Detective Isom also similarly testified that there was a child present outside as the confidential informant left the house on March 28, 2007. Isom testified that the child was a white male and appeared to be approximately eight years old.
 {¶ 31} Our review of State's Exhibit 4, which was submitted to the jury in its entirety, reveals that the contents of the videotape are consistent with the testimony proffered by Detectives Chase and Isom. Specifically, we note that while Amanda still inside the house she states "I'll holla at ya girl" and as she opens the front door, a white male child wearing a yellow shirt comes into the frame of the videotape on the left side of the house. The child is right next to the side of the house and appears close enough to touch both the house and the wooden platform or stoop leading up to the front door of the house. Additionally, we note that as Amanda is leaving the house, she and the child both appear in the frame of the videotape at the same time.
 {¶ 32} Accordingly, it is apparent from the evidence presented at trial, that a jury could have reasonably determined that the March 28, 2007 trafficking *Page 15 
incident was committed in the vicinity of a juvenile so as to satisfy the requirements of R.C. 2925.01(BB). In fact, even if, as suggested by the Appellant, the transaction had been completed some moments prior to the informant leaving the house, the jury could have reasonably inferred from the close proximity of the juvenile to the house that he would have still been within 100 feet of the house at the time the drug transaction was concluding moments before the informant was seen leaving the house.
 Count Two: Possession of Cocaine {¶ 33} Douglas was also charged with and convicted of one count of Possession of Cocaine in violation of R.C. 2925.11(A)(C)(4). This section provides, in relevant part, as follows:
 (A) No person shall knowingly obtain, possess, or use a controlled substance.
 * * *
 (C) Whoever violates division (A) of this section is guilty of one of the following:
 (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 (a) Except as otherwise provided . . . possession of cocaine is a felony of the fifth degree. . .
 {¶ 34} Douglas's Possession of Cocaine charge and conviction relates to events occurring on May 25, 2007. At trial, the jury heard the testimony of Detective Isom who testified that on this date he and Detective Chase returned to *Page 16 
729 Kentucky Avenue to arrest Sheree Fraker. Isom testified that on this date both Douglas and Sheree were arrested and that Sheree gave him permission to search the house. Isom testified that when he searched the house he found a bag of cocaine, a set of scales and marijuana in the back bedroom. Specifically, Isom testified that the cocaine and scales were on an end table next to the bed and the marijuana was on the bed. Isom also testified that the bedroom appeared to be inhabited by more than one person because Sheree told him as such and there was both male and female clothing in the bedroom.
 {¶ 35} Isom testified that after searching the house and finding the drugs and the scales, he had a conversation with Douglas whereupon he advised Douglas that he had found the drugs and scales and Douglas admitted that these items were his. Isom also testified that Douglas did not argue about the fact that these items were found in the bedroom nor did he deny that those items were his. Isom testified that Douglas was very cooperative and seemed to understand what he (Isom) was talking about. Additionally, Isom testified that Douglas never denied or argued that he wasn't selling drugs or that he wasn't possessing cocaine.
 {¶ 36} The jury also heard the testimony of Scott Dobransky ("Dobransky"), a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation. Dobransky testified that he analyzed the contraband confiscated on May 25, 2007. (See State's Exhibit 6). Dobransky *Page 17 
testified that Exhibit 6 contained cocaine, specifically crack cocaine, a Schedule II controlled substance weighing 0.2 grams. (See also State's Exhibits 10 and 10A).
 {¶ 37} Based upon the foregoing, we find that the trial court did not err in overruling Douglas's Crim. R. 29 motion for acquittal as the evidence presented was sufficient to sustain a conviction for each offense and any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Additionally, we find that Douglas's convictions were supported by the manifest weight of the evidence as a reasonable jury could have found Douglas guilty of Aiding and Abetting Trafficking in Cocaine and Possession of Cocaine. Douglas's convictions were also supported by sufficient evidence to sustain his convictions and we cannot say that the jury lost its way in convicting Douglas. Accordingly, Douglas's first and second assignments of error are overruled.
 Assignment of Error No. 3 {¶ 38} In his third assignment of error, Douglas alleges that the trial court erred in overruling his motion for a mistrial after the State was permitted to introduce testimony, which Douglas alleges inferred that he was a known drug dealer.
 {¶ 39} "Mistrials are necessary `only when the ends of justice so require and a fair trial is no longer possible.'" State v. Welch, 3rd Dist. No. 16-06-02, 2006-Ohio-6684 citing State v.Drummond, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 131 (quoting State v. Brinkley, 105 Ohio St.3d 231, *Page 18 824 N.E.2d 959; see also State v. Franklin (1991), 62 Ohio St.3d 118, 127,580 N.E.2d 1. A motion for a mistrial is addressed to the sound discretion of the trial court. State v. Saunders (1994),98 Ohio App.3d 355, 358, 648 N.E.2d 587 citing State v. Glover (1988),35 Ohio St.3d 18, 517 N.E.2d 900; see also State v. Sage (1987), 31 Ohio St.3d 173,182, 510 N.E.2d 343. Absent an abuse of discretion, an appellate court will not disturb the trial court's ruling on a motion for a mistrial because "[t]he trial judge is in the best position to determine whether the situation in [the] court room warrants the declaration of a mistrial." Welch, supra, citing State v. Ahmed (2004),103 Ohio St.2d 27, 813 N.E.2d 637. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 40} In his motion for a mistrial, Douglas argued that the testimony presented by Detectives Isom and Chase implied that he was a known drug dealer. Specifically, Douglas argued that by asking the officers how many times they had seem him, or how many various contacts they had with him, the State implied to the jury that these contacts were directly related to drug transactions which was highly prejudicial to Douglas and poisoned the jury against him. In response, the State argued that the evidence presented by the officers regarding their contacts *Page 19 
with Douglas was relevant because of the necessity of identifying Douglas going into the Kentucky Avenue residence as well as being able to identify his voice as the caller during the March 28, 2007 drug transaction.
 {¶ 41} Our review of the record reveals that both Detective Isom and Detective Chase identified Douglas as the person they saw enter the residence located at 729 Kentucky Avenue on March 28, 2007. In order to properly identify Douglas and testify that they observed him entering the house on Kentucky Avenue, it was necessary for the State to lay a foundation that the officers knew Douglas prior to trial and had an opportunity to observe him. See Evid. R. 602.
 {¶ 42} In laying this foundation, the following exchange occurred between the State and Isom:
 State: How do you know that it was the Defendant who went into the front door of 729 Kentucky?
 Isom: Cause I know him.
 State: How many times do you think you've seen him in the past 11 years?
 Isom: Seen him?
 State: Yes.
 Isom: 50, 60?
 State: So you've had quite a few contacts with the Defendant?
 Isom: Seen him or contacts?
 State: Seen him?
 Isom: Probably over 50.
 State: Ok. How many contacts have you actually made with him?
 * * *
 Isom: 15 times maybe. *Page 20 
 {¶ 43} Additionally, the following exchange occurred between the State and Chase:
 State: Based on a review of this videotape, were you able to identify who that was who was in the house?
 Chase: Yes, ma'am.
 State: Who was that?
 Chase: Yes ma'am, Jerome Douglas, AKA Papa.
 State: Do you see him in the courtroom today? Could you point him out for us?
 Chase: Right here wearing the brown and blue short sleeve shirt.
 State: How could you tell that was the Defendant?
 Chase: I've dealt with Jerome over the years, and know him on sight, what not.
 State: How many years do you think you've known the Defendant?
 Chase: Seven and a half, seven years.
 * * *
 State: How many contacts do you think you've had with the Defendant?
 Chase: At least a few.
 State: When you say "a few" is that two or three?
 Chase: Probably a little bit more.
 State: Could you give us some idea?
 Chase: Three, four, five times, maybe.
 {¶ 44} Our review of the record also reveals that both Isom and Chase identified Douglas as the person they heard on the audiotape of the second drug buy on March 28, 2007. (See State's Exhibit 3). In order to properly identify Douglas's voice on the audiotape recording, it was necessary for the State to lay a foundation that the officers recognized Douglas's voice and could identify it prior to trial. See Evid. R. 901(B)(5). *Page 21 
 {¶ 45} In laying this foundation for identifying Douglas's voice, the following exchange occurred between the State and Isom:
 State: And when we're talking about contacts, you've actually talked to him [Douglas] at that contact time?
 Isom: Yes.
 State: Have you had an opportunity to listen to his voice?
 Isom: Oh yes.
 State: And listen to what he sounds like?
 Isom: Yes, ma'am.
 State: I guess, would that have been over the entire span of the 11 years?
 Isom: Yes, ma'am.
 * * *
 State: Now are you listening to the audio once the CI has gone into the home?
 Isom: Yes.
 * * *
 State: Through the conversation on the audio, could you tell who was in the house on this second purchase out at 729 Kentucky Avenue?
 * * *
 Isom: Sheree and Papa. Jerome.
 State: How could you tell that it was the Defendant?
 Isom: From his voice.
 {¶ 46} Additionally, regarding the voice identification of Douglas, the following exchange occurred between the State and Chase:
 State: How many times do you think you've talked to the Defendant?
 Chase: Up to that point, or up to this point?
 State: Well, total?
 Chase: A little bit more. Five, six times probably.
 State: Alright. And when I say that you've talked to him, did the Defendant talk back to you?
 Chase: Yes.
 State: Did you have an opportunity to listen to State's Exhibit 3?
 Chase: Yes, I did. *Page 22 
 * * *
 State: Were you able to identify who was making the telephone call? On that audio?
 Chase: Yes, ma'am.
 State: And who was making that telephone call?
 Chase: Papa Douglas. Jerome Douglas.
 State: What is Papa?
 Chase: It's just a street name that people call him.
 State: Why do people have street names?
 State: Every drug dealer in town has got a —
 {¶ 47} At this point in Chase's testimony, Douglas's counsel objected and the court sustained the objection. Chase did not finish his answer and the State did not ask Chase any further questions that may have lead him to testify or answer in a similar manner. Additionally, our review of the record reveals that the State did not make any effort to elicit testimony from any of the officers who testified that it is common for drug dealers to have street names or that every drug dealer automatically has a street name.
 {¶ 48} Although we note that the specific line of questioning by the State regarding the use of street names may not have been necessary to the issue of voice identification or otherwise prudent, any error resulting from this line of questioning does not rise to the level of reversible error.
 {¶ 49} As the trial judge was in the best position to determine whether the situation in the courtroom warranted the declaration of a mistrial, we find that the trial court's ruling on Douglas's motion for a mistrial was not unreasonable, arbitrary, or unconscionable. Therefore, we find that the trial court did not abuse *Page 23 
its discretion by overruling Douglas's motion for a mistrial. Accordingly, Douglas's third assignment of error is overruled.
 {¶ 50} Based on the foregoing, the November 14, 2007 Judgment Entry of the Marion County Court of Common Pleas is affirmed.
Judgment affirmed.
 PRESTON, J., concurs.
 ROGERS, J., concurs in part and dissents in part.
[1] Our review of the record reveals that Douglas made his Crim. R. 29 motion at the close of the State's casein-chief. This motion was denied by the trial court and Douglas declined to present evidence in his defense.
[2] We note that the first drug transaction on March 28, 2007 is not the specific drug transaction contained in Count One of the indictment or at issue in the present case. Accordingly, our review of Detective Isom's testimony shall focus only on the second drug transaction occurring on March 28, 2007.
[3] We note that the first drug transaction on March 28, 2007 is not the specific drug transaction contained in Count One of the indictment or at issue in the present case. Accordingly, our review of Amanda's testimony shall focus only on the second drug transaction occurring on March 28, 2007.